# COOK COUNTY CLERK DAVID ORR
69 W. Washington, Suite 500, Chicago, Illinois 60602



TEL (312) 603-0996 FAX (312) 603-9788 WEB cookcountyclerk.com

August 30, 2017

Hon. Kimberly Foxx
State's Attorney's Office
500 Richard J. Daley Center
Chicago, IL 60602

ATTN: Mr. Chaka Patterson

Dear Mr. Patterson,

Attached please find one copy of a Summons, served by the Sheriff, regarding:

Matthew D. Wilson; Troy Ehdlund vs. William M. Beavers; Deborah Sims; et al
Case No.: 2017-CH-10345

This notice has been filed by: David G. Signale PC, 799 Roosevelt #207, Glen Ellyn, IL
60137.

Sincerely,

David Orr

David Orr
Cook County Clerk

Attachment

Case: 1:17-cv-07002 Document #: 2-1 Filed: 09/28/17 Page 2 of 68 PageID #:8

## IN THE CIRCUIT COURT OF COOK COUNTY, ILLINOIS

MATTHEW D. WILSON; TROY EHDLUND

**v.**

WILLIAM M. BEAVERS; DEBORAH SIMS;

JOAN PATRICIA MURPHY;

JOSEPH MARIO MORENO;

ROBERT MALDONADO; PETER N. SILVESTRI;

MIKE QUIGLEY; JOHN F. DALEY;

FOREST CLAYPOOL; LARRY SUFFREDIN;

GREGG GOSLIN; TIMOTHY O. SCHNEIDER;

ANTHONY J. PERAICA;

ELIZABETH ANN DOODY GORMAN;

THOMAS DART;

COOK COUNTY, A PUBLIC BODY;

TODD STROGER; EARLEAN COLLINS;

ROBERT STEELE; JERRY BUTLER;

No. **2017-CH-10345**

Defendant Address:

GREGG GOSLIN

118 NORTH CLARK STREET

ROOM 537

CHICAGO, IL 60602

☑ **SUMMONS** ☐ **ALIAS - SUMMONS**

To each defendant:

YOU ARE SUMMONED and required to file an answer to the complaint in this case, a copy of which is hereto attached, or otherwise file your appearance, and pay the required fee, in the Office of the Clerk of this Court at the following location:

☑ Richard J. Daley Center, 50 W. Washington, Room **802** ,Chicago, Illinois 60602

☐ District 2 - Skokie
  5600 Old Orchard Rd.
  Skokie, IL 60077

☐ District 3 - Rolling Meadows
  2121 Euclid 1500
  Rolling Meadows, IL 60008

☐ District 4 - Maywood
  Maybrook Ave.
  Maywood, IL 60153

☐ District 5 - Bridgeview
  10220 S. 76th Ave.
  Bridgeview, IL 60455

☐ District 6 - Markham
  16501 S. Kedzie Pkwy.
  Markham, IL 60428

☐ Richard J. Daley Center
  50 W. Washington, LL-01
  Chicago, IL 60602

You must file within 30 days after service of this Summons, not counting the day of service.

**IF YOU FAIL TO DO SO, A JUDGMENT BY DEFAULT MAY BE ENTERED AGAINST YOU FOR THE RELIEF REQUESTED IN THE COMPLAINT.**

To the officer:

This Summons must be returned by the officer or other person to whom it was given for service, with endorsement of service and fees, if any, immediately after service. If service cannot be made, this Summons shall be returned so endorsed. This Summons may not be served later than thirty (30) days after its date.

☐ Atty. No.: **43762**

Name: DAVID G SIGALE PC

Atty. for: MATTHEW D. WILSON

Address: 799 ROOSEVELT #207

City/State/Zip Code: GLEN ELLYN, IL 60137

Telephone: (630) 452-4547

Primary Email Address: dsigale@sigalelaw.com

Witness: Friday, 28 July 2017

DOROTHY BROWN, Clerk of Court

Date of Service:

(To be inserted by officer on copy left with Defendant or other person)

**DOROTHY BROWN, CLERK OF THE CIRCUIT COURT OF COOK COUNTY, ILLINOIS**

**Service by Facsimile Transmission will be accepted at:**

_____

_____                    (Area Code)    (Facsimile Telephone Number)

## IN THE CIRCUIT COURT OF COOK COUNTY, ILLINOIS

MATTHEW D. WILSON; TROY EHDLUND

v.

No. 2017-CH-10345

WILLIAM M. BEAVERS; DEBORAH SIMS;

JOAN PATRICIA MURPHY;

JOSEPH MARIO MORENO;

ROBERT MALDONADO; PETER N. SILVESTRI;

MIKE QUIGLEY; JOHN F. DALEY;

FOREST CLAYPOOL; LARRY SUFFREDIN;

GREGG GOSLIN; TIMOTHY O. SCHNEIDER;

ANTHONY J. PERAICA;

ELIZABETH ANN DOODY GORMAN;

THOMAS DART;

COOK COUNTY, A PUBLIC BODY;

TODD STROGER; EARLEAN COLLINS;

ROBERT STEELE; JERRY BUTLER;

Defendant Address:

GREGG GOSLIN

118 NORTH CLARK STREET

ROOM 537

CHICAGO, IL 60602

☑ SUMMONS  ☐ ALIAS - SUMMONS

To each defendant:

YOU ARE SUMMONED and required to file an answer to the complaint in this case, a copy of which is hereto attached, or otherwise file your appearance, and pay the required fee, in the Office of the Clerk of this Court at the following location:

☑ Richard J. Daley Center, 50 W. Washington, Room 802_____ ,Chicago, Illinois 60602

☐ District 2 - Skokie          ☐ District 3 - Rolling Meadows          ☐ District 4 - Maywood

   5600 Old Orchard Rd.          2121 Euclid 1500              Maybrook Ave.
   Skokie, IL 60077              Rolling Meadows, IL 60008          Maywood, IL 60153

☐ District 5 - Bridgeview      ☐ District 6 - Markham          ☐ Richard J. Daley Center

   10220 S. 76th Ave.           16501 S. Kedzie Pkwy.          50 W. Washington, LL-01
   Bridgeview, IL 60455          Markham, IL 60428              Chicago, IL 60602

You must file within 30 days after service of this Summons, not counting the day of service.

IF YOU FAIL TO DO SO, A JUDGMENT BY DEFAULT MAY BE ENTERED AGAINST YOU FOR THE RELIEF REQUESTED IN THE COMPLAINT.

To the officer:

This Summons must be returned by the officer or other person to whom it was given for service, with endorsement of service and fees, if any, immediately after service. If service cannot be made, this Summons shall be returned so endorsed. This Summons may not be served later than thirty (30) days after its date.

☐ Atty. No.: 43762

Name: DAVID G SIGALE PC

Atty. for: MATTHEW D. WILSON

Address: 799 ROOSEVELT #207

City/State/Zip Code: GLEN ELLYN, IL 60137

Telephone: (630) 452-4547

Primary Email Address: dsigale@sigalelaw.com

Witness: Friday, 28 July 2017

DOROTHY BROWN, Clerk of Court

Date of Service: _____

(To be inserted by officer on copy left with Defendant or other person)

## DOROTHY BROWN, CLERK OF THE CIRCUIT COURT OF COOK COUNTY, ILLINOIS

Secondary Email Address(es):

_____

_____

**Service by Facsimile Transmission will be accepted at:**

_____

(Area Code)   (Facsimile Telephone Number)

**DOROTHY BROWN, CLERK OF THE CIRCUIT COURT OF COOK COUNTY, ILLINOIS**

ELECTRONICALLY FILED
7/28/2017 8:30 AM
2007-CH-10345
CALENDAR: 08
PAGE 1 of 25
CIRCUIT COURT OF
COOK COUNTY, ILLINOIS
CHANCERY DIVISION
CLERK DOROTHY BROWN

## IN THE CIRCUIT COURT OF COOK COUNTY, ILLINOIS
## COUNTY DEPARTMENT – CHANCERY DIVISION

| | |
|---|---|
| Matthew D. Wilson and Troy Edhlund, ) | |
| ) | |
| Plaintiffs, ) | |
| ) | |
| v. ) | |
| ) | |
| Cook County, a public body and corporate, ) | |
| Todd Stroger, Board President, in his ) | |
| official capacity, and its Board of ) | |
| Commissioners in their official capacities, ) | Case No. |
| namely: Earlean Collins, Robert Steele, ) | |
| Jerry Butler, William M. Beavers, ) | |
| Deborah Sims, Joan Patricia Murphy, ) | |
| Joseph Mario Moreno, Robert Maldonado, ) | |
| Peter N. Silvestri, Mike Quigley, ) | |
| John F. Daley, Forest Claypool, ) | |
| Larry Suffredin, Gregg Goslin, ) | |
| Timothy O. Schneider, Anthony J. Peraica, ) | |
| Elizabeth Ann Doody Gorman and ) | |
| Thomas Dart, Sheriff of Cook County, ) | |
| in his official capacity, ) | |
| ) | |
| Defendants. ) | |

## COMPLAINT FOR DECLARATORY AND INJUNCTIVE RELIEF

Plaintiffs, Matthew D. Wilson and Troy Edhlund, by and through LAW FIRM

OF DAVID G. SIGALE, P.C., their attorney, seek a declaratory Judgment,

permanent injunction, and other relief, against the County of Cook and individual

Defendants[1], and in support thereof state as follows:

---

[1] For purposes of refiling, Plaintiffs have kept the caption of this case as it was at the time of the original filing in 2007. However, since then, the persons holding the official positions of Cook County President, and County Board Commissioners, have in part changed. Plaintiffs will amend the Complaint at the first appropriate opportunity, or will agree to amending the County officials, *instanter*, at the appropriate time.

## INTRODUCTION

This is a re-filing of Case No. 07 CH 4848, previously filed and voluntarily non-suited in this court. The refiling is within one year of the date of the previous dismissal.

## STATEMENT OF FACTS

ELECTRONICALLY FILED
7/28/2017 8:30 AM
2017-CH-10345
PAGE 2 of 25

1.    On November 14, 2006, the County Commissioners of County of Cook, a public body as defined in 5 ILCS 120/1, *et seq.*, enacted an Amendment to the Cook County Deadly Weapons Dealer Control Ordinance ("the Ordinance"), setting forth therein its own definitions of "Assault Weapons" and making it a crime for any person who "shall manufacture, sell, offer or display for sale, give, lend, transfer ownership of, acquire or possess any assault weapon or large capacity magazine." As a penalty, the Ordinance provides that "[a]ny person found in violation of this section shall be sentenced to not more than six months imprisonment, or fined not less than $500.00 and not more than $1,000.00, or both." The Ordinance further requires that persons who, prior to the enactment of this Amended Ordinance, legally possessed an assault weapon or large capacity magazine prohibited by this section "shall have ninety (90) days from the effective date of the Ordinance to do any of the following without being subject to prosecution:

    (a.) To remove the assault weapon or large capacity magazine from within the limits of the County of Cook;

    (b.) To modify the assault weapon or large capacity magazine either to render it permanently inoperative or to permanently make it a device no longer defined as an assault weapon or large capacity magazine;

(c.) To surrender the assault weapon or large capacity magazine to the Sheriff or his designee for disposal as provided below."

The Ordinance provides further for the destruction of weapons confiscated upon direction of the Sheriff if he ascertains that said firearm is not required for evidence, thereby treating such confiscated weapons as contraband *per se*. A copy of the Ordinance Amendment is attached hereto as Plaintiffs' Exhibit A.

2.     Troy Edhlund is a citizen/resident of Rolling Meadows, in Cook County, Illinois, and the owner of several firearms magazines, and gun parts which he legally purchased, including (a.) M1 Carbine, a semiautomatic .30 caliber rifle with a detachable magazine; (b.) M1 Garand, a semiautomatic .30 caliber rifle with a fixed magazine, (c.) French MAS 49/56 semi-automatic 7.5x54 caliber rifle with a detachable magazine, (d.) Egyptian Hakim semi-automatic .8mm. rifle with a 10 round detachable magazine, (e.) Swedish AG42B semi-automatic rifle with a 10 round detachable magazine. (f.) Romak 3 Romanian semi-automatic 8 mm. rifle, and (g.) S&W 99 in .40 caliber. See Plaintiff Edhlund's firearms types at Group Exhibit B.

3.     Troy Edhlund is a man of ordinary intelligence, and he is unsure upon reading the aforementioned ordinance as amended, and must guess whether his firearms are "assault weapons" within the vague language of the amended ordinance's definitions.

4.     Troy Edhlund must guess whether his firearms may be considered to be "assault weapons" by law enforcement officials under the subject amended

ELECTRONICALLY FILED
7/28/2017 8:30 AM
2017-CH-10345
PAGE 3 of 25

3

Ordinance's vague language, and he is unsure whether his ownership of these firearms subjects him to imprisonment and fines.

5.     In addition to the firearms that Plaintiff Troy Edhlund owns, he desires to legally purchase additional firearms, parts and accessories, including some parts and accessories for the firearms he now owns, but cannot because he must guess whether they may be banned by the subject amended ordinance.

6.     Troy Edhlund is a law-abiding citizen who has never been convicted of a crime, and who possesses the said firearms for self-protection and protection of his wife and two children in their home, as part of a collection, and for target shooting and hunting. He possesses a FOID card issued by the Illinois State Police pursuant to the Illinois FOID ACT, 430 ILCS 65/1, *et seq.*

7.     Matthew D. Wilson is a citizen/resident of the Village of Brookfield, in Cook County, Illinois, and owns several firearms which he legally purchased, including a.) Walther P99 pistol in 9 mm, and b.) S&W 22A Sport [target] pistol, both with 10 round detachable magazines. *See* Plaintiff Wilson's firearms types as Group Exhibit B.

8.     Matthew D. Wilson is a man of ordinary intelligence, and he is unsure upon reading the aforementioned ordinance as amended, and must guess whether his firearms are "assault weapons" within the vague language of the amended ordinance's definitions.

9.     Matthew D. Wilson must guess whether his firearms may be considered to be "assault weapons" by law enforcement officials under the subject

ELECTRONICALLY FILED
7/28/2017 8:30 AM
2017-CH-10345
PAGE 4 of 25

4

amended Ordinance's vague language, and he is unsure whether the ownership of these firearms subjects him to imprisonment and fines.

10.     In addition to the firearms that Plaintiff Matthew D. Wilson owns, he desires to legally purchase additional firearms, parts and accessories, including some parts and accessories for the firearms he now owns, but cannot because he must guess whether they may be banned by the subject amended ordinance.

11.     Matthew D. Wilson is a law-abiding citizen having never been convicted of a crime, and who possesses the said firearms for self-protection and protection of himself and his wife in their home, and for target shooting. He has a FOID card issued by the Illinois State Police pursuant to the Illinois FOID Act, 430 ILCS 65/1 *et seq.*

## IRREPARABLE HARM AND INADEQUATE REMEDY AT LAW

12.     Plaintiffs will suffer irreparable harm if the Ordinance is enforced. Unless relief is granted herein, Plaintiffs will incur irreparable harm in that despite their aforesaid legal possession of firearms and magazines, and without any intent on their part to engage in any illegal activity they will be subject to arrest, prosecution and imprisonment, and be caused to expend great sums of money for their defense and face imprisonment and fine.

13.     The Plaintiffs will have no adequate remedy at law, there being no forum to recover damages, the County most likely being immune from liability for tortious conduct and resulting losses. Money damages, in an event, could never

ELECTRONICALLY FILED
7/28/2017 8:30 AM
2017-CH-10345
PAGE 5 of 25

5

compensate the Plaintiffs for the infringement of their fundamental rights as hereinafter alleged.

14.     While care should be used in granting injunctions to avoid prospective injuries, there is no requirement that the Court must wait until the injury occurs before granting relief, and Plaintiffs have demonstrated both irreparable harm is imminent, and their remedy at law would be inadequate.

15.     Because the 90-day time limit set forth in the Ordinance has passed, within which Plaintiffs must conform to the amended ordinance's requirements to avoid being prosecuted, damages resulting from enforcement of the subject ordinance as amended are likely and not merely possible.

## COUNT I - THE ORDINANCE DEFINITION OF "ASSAULT WEAPON" IS UNCONSTITUTIONALLY VAGUE (PRESERVED FOR APPEAL).

1-15.     Plaintiffs reassert and reallege paragraphs 1 through 15, above, as paragraphs 1 through 15 of this Count I.

16.     The Cook County Assault Weapons Ordinance, as amended and adopted on November 14, 2006, violates the due process clause of the U.S. Constitution, as applied to the States by the 14th Amendment, because of vagueness in its definition language of "assault weapons."

17.     This ordinance as amended violates the "due process" clause in that it purportedly defines "assault weapons" only by an arbitrary and ill-defined subset of these weapons without providing any explanation for its selections, and the language employed to describe various features or components of firearms that make them "assault weapons" is both vague and arbitrary, to wit:

ELECTRONICALLY FILED
7/28/2017 8:30 AM
2017-CH-10345
PAGE 6 of 25

6

18.     Section 6-(a)(1) is unconstitutionally vague and arbitrary by use of the language "A semiautomatic rifle *that has the capacity to accept* a large capacity magazine *detachable or otherwise*, and one or more of the following [listing various vague features or components of firearms]" [Underscoring added.]

19.     It has been determined by Plaintiffs' experts that any semiautomatic rifle that accepts a magazine adapted to it having a capacity often rounds will accept and employ a magazine adapted to it containing 11 or more rounds which may exist anywhere in the world.

20.     So long as a magazine exists anywhere in the world with a capacity of more than ten rounds, anyone who possesses a semiautomatic rifle with a detachable magazine (with any accessory, part or component banned by the vague language in subparagraphs A through E of Section 6-1(a)(1)), that will accept that magazine, is subject to arrest, prosecution and imprisonment as that individual then would have a firearm which "has the capacity to accept a large capacity magazine." even if he does not possess a large capacity magazine, and has no intention of acquiring a large capacity magazine.

21.     A person of ordinary intelligence need not know whether the subject Ordinance bans their firearm, since the Ordinance contains no scienter requirement of an owner's knowledge as to whether a large capacity magazine, which could be accepted by his firearm, is in fact in existence.

22.     Although Plaintiff Edhlund's M1 Garand when purchased was not manufactured to accept a large capacity magazine (defined in the Ordinance as one

ELECTRONICALLY FILED
7/28/2017 8:30 AM
2017-CH-10345
PAGE 7 of 25

7

holding in excess of ten rounds), Plaintiffs' experts have determined that there is available in the marketplace a since manufactured modified trigger guard/floor plate assembly which can be interchanged with trigger guard/floor plate assembly of the M1 Garand so as to make it capable of accepting a 20 round magazine.

23. Most of Plaintiff Edhlund's semiautomatic rifles, including the French MAS 49/56 semi-automatic rifle, Egyptian Hakim 8 mm. semiautomatic and Romak 3 Romanian semiautomatic were manufactured to accept 10 round detachable magazines.

24. Plaintiff Edhlund does not possess, and do not know of any other magazines which would fit his respective rifles, but would, nevertheless, face arrest and prosecution because said rifles would accept a detachable magazine adapted to them with a capacity of 11 rounds or more, if one has ever been manufactured anywhere, or will be in the future.

25. Section 6-1(a)(1)(B) is unconstitutionally vague and arbitrary as it makes illegal anyone's possession of a semi-automatic rifle [as described in (1)] *that has "[any feature capable of functioning as a protruding grip that can be held by the non-trigger hand."* [Italics added.]

26. This language, as aforesaid, would encompass a sling attachment usually found attached to the bottom or side of the forend on countless, ordinary sporting rifles, including former military-style rifles, used in competition matches sponsored by the Civilian Marksmanship Program and/or for hunting. These would

ELECTRONICALLY FILED
7/28/2017 8:30 AM
2017-CH-10345
PAGE 8 of 25

include the M1 Carbine and M1 Garand, commonly used both in competition shooting and hunting.

27.    Such sporting rifles would in no way be considered "assault weapons" by persons of ordinary intelligence, but under the ordinance as amended anyone possessing such semi-automatic sporting rifles will be subject to prosecution and imprisonment.

28.    Plaintiff Troy Edhlund's M-1 Garand, MAS 49/56, MiCarbine, and his Egyptian Hakim rifle all have this feature, and thus Edhlund cannot determine with certainty, and must guess, if that feature is a "protruding grip" within the amended Ordinance definition, and if law enforcement officials would consider that feature to be a "protruding grip" within said definition

29.    Section 6-1(a)(1)(D) is unconstitutionally vague and arbitrary in that it makes it illegal to possess a semi-automatic rifle [as described in (1)] with "[a] shroud attached to the barrel, or that partially or completely encircles the barrel, allowing the bearer to hold the firearm with the non-trigger hand without being burned, but excluding a slide that encircles the barrel..."

30.    Almost any long-arm rifle has a forend component that at least partially encircles the barrel, and this feature is found on virtually hundreds of sporting semiautomatic rifles used for hunting or target competition shooting, and include those dating as far back as the 1900's, such as the Winchester 1905, 1907 and 1910 models. See Plaintiffs' Group Exhibit B-(a).

ELECTRONICALLY FILED
7/28/2017 8:30 AM
2017-CH-10345
PAGE 9 of 25

9

31.    Firearms owned by plaintiff Troy Edhlund, specifically his M1 Garand, M1 Carbine, French MAS 49/56 and his Egyptian Hakim have this feature, and he must guess at whether those firearms have "shrouds" within the amended Ordinance's definition thereof, and if law enforcement officials would consider this feature a "shroud."

32.    Section 6-1(a)(3) by use of the language "[a] semiautomatic pistol that has the capacity to accept a detachable magazine and has one or more of the following. . ." [Italics added.] and thereafter listing subparagraphs "A, B, C, D and E" sets forth almost identical features as those stated in Section 6-1(a)(1), and as herein noted are unconstitutionally vague features.

33.    Section 6-1(a)(3)(D) is unconstitutionally vague and arbitrary in that it makes it illegal to possess a semi-automatic pistol that has the capacity to accept a detachable magazine and has "[a] muzzle brake or muzzle compensator,..."

34.    Section 6-1(a)(1)(E) makes it illegal to possess a s semiautomatic rifle that has the capacity to accept a large capacity magazine detachable or otherwise and has "[a] muzzle brake or muzzle compensator." Unlike federal law which banned "flash suppressors," the "muzzle brake" and "muzzle compensator" are not used to prevent one from determining where a shot is coming from (as it may concern law enforcement officials) but, instead (by the very definitions stated in the amended ordinance at 6-1 (d(e)) to "reduce recoil" (muzzle brake) or to "control muzzle movement" (muzzle compensator), both features commonly employed in

ELECTRONICALLY FILED
7/28/2017 8:30 AM
2017-CH-10345
PAGE 10 of 25

10

target competition matches including Olympic target shooting events, the latter purportedly exempt under Section 6-1(B). of the subject ordinance as amended.

35.    Section 6-1(a)(3)(A), is unconstitutionally vague and arbitrary in that it makes it illegal to possess a semiautomatic pistol that has the capacity to accept a detachable magazine and "[a]ny feature capable of functioning as a protruding grip that can be held by the non-trigger hand."

36.    Many manufacturers have made pistols that can accept accessories such as flashlights and lasers attached to a forward rail or grooves below the barrel and in front of the trigger guard, and that feature may be considered by law enforcement officials to be a "protruding grip."

37.    Plaintiff Wilson has a Walther P99 pistol in 9mm with rails for mounting special accessories under the barrel in front of the trigger guard, and he desires to place a laser or a flashlight onto the forward rail of his handgun, both for accuracy in target shooting and for the purpose of assuring his aim at an intruder in his home, but he cannot determine with certainty, and must guess, if either of these accessories placed onto the forward rail is a "pistol grip" within the meaning of the amended ordinance definition thereof, and if law enforcement officials would consider same a "pistol grip" within said definition.

38.    Plaintiff Edhlund owns a S & W P99 with rails for mounting special accessories under the barrel in front of the trigger guard, and he desires to place a laser or a flashlight onto the forward rail of his handgun for the purpose of assuring his aim at an intruder in his home, but he cannot determine with certainty, and

ELECTRONICALLY FILED
7/28/2017 8:30 AM
2017-CH-10345
PAGE 11 of 25

11

must guess, if either of said accessories placed onto the forward rail is a "protruding grip" within the meaning of the definition thereof in the amended ordinance, and if law enforcement officials would consider this a "protruding grip" within said definition.

ELECTRONICALLY FILED
7/28/2017 8:30 AM
2017-CH-10345
PAGE 12 of 25

39.     Section 6-1(a)(4)(B) is unconstitutionally vague and arbitrary in that it makes it illegal to possess a semi-automatic shotgun with "[a]ny feature functioning as a protruding grip that can be held by the non-trigger hand." Almost all semi-automatic shotguns have a forend that at least partially encircles the barrel, and is found on virtually hundreds of sporting shotguns used for hunting or trap and skeet shooting, including competitive matches. See various semi-automatic shotguns with typical forends at Plaintiffs' Group Exhibit C.

40.     The forend component of a shotgun, that is held by the non-trigger hand, may be considered by law enforcement officials as a "feature functioning as a protruding grip."

41.     Section 6-1(a)(4)(D) is unconstitutionally vague and arbitrary in that it makes it illegal to possess a shotgun with "[a] fixed magazine capacity in excess of 5 rounds." Since most shotgun rounds are available in different lengths, a shotgun's magazine capacity may increase to more than five rounds, and this language would impose criminal liability regardless of whether the owner knows of the existence of shorter length rounds that would fit in his or her semi-automatic shotgun.

42.     Section 6-1(a)(6) is unconstitutionally vague and arbitrary in that it makes it illegal to possess a "Conversion kit, part or combination of parts, from

12

which an assault weapon can be assembled, if those parts are in the possession or under the control of the same person."

43.    The amendment at this Section conflicts with federal law regarding a so-called "conversion kit" that requires a "*mens rea*" element to constitute a violation.

44.    Plaintiffs' experts have determined that there exists in the firearm market "parts kits" that can be purchased by Plaintiffs, without any knowledge that they can assemble an "assault weapon" from said part or parts within the vague meaning thereof in the amended ordinance, so that they, and others similarly situated, upon purchase of these "kits, or parts" would be subjected to arrest and criminal prosecution because the amendment language defining "assault weapons" fails to provide sufficient information to enable a person of average intelligence to determine whether a particular combination of parts is within the ordinance amendment's coverage.

45.    Section 6-1(a)(7) of the amended Ordinance is unconstitutionally vague and arbitrary by use of the language: "Shall include but not be limited to, the assault weapons models identified as follows: (A) The following rifles or copies or duplicates thereof." [Underscoring added.]

46.    Plaintiffs, persons of normal intelligence, must guess at the meanings of "copies" or "duplicates" as applied to firearms, as

        (i) the standard Webster unabridged dictionary definition of "copy" and of "duplicate," while showing some similarity in the words as verbs,

ELECTRONICALLY FILED
7/28/2017 8:30 AM
2017-CH-10345
PAGE 13 of 25

13

ELECTRONICALLY FILED
7/28/2017 8:30 AM
2017-CH-10345
PAGE 14 of 25

adjectives or nouns, defines "copy" as "to make something so that it resembles an existing thing, whereas "duplicate" is defined as "either of two things exactly alike and usually produced at the same time or by the same process."

(ii) Black's Law Dictionary treats both words in the context of writings or documents, in its principal definition of the words used as nouns, and when "duplicate" is used as a verb it means: "To double, repeat, make or add a thing exactly like a preceding one; reproduce exactly [Underscoring added.]

(iii) These terms can be extremely difficult to apply to firearms that may have similarity in function, but can be totally different in outward features, and inside components.

47.    Plaintiff, Edhlund, has a Romak 3, a Romanian rifle in 7.62x54 caliber which has features similar to several of the firearms listed at Sec. 6-1(a)(7)(A)(i), and while it should not be a copy or duplicate of the firearms listed at sub-paragraph (i), because of the vague language in the amended ordinance language defining "assault weapons" he must "guess" whether this rifle would be considered a copy or duplicate by law enforcement officials, thereby subjecting him to arrest and prosecution.

48.    Section 6-1(a)(7)(A)(xi) is unconstitutionally vague and arbitrary in that it contains only the term "saiga." The "Saiga" can be a rifle or a shotgun, and without specifying either, Plaintiffs must guess the vague meaning of this term.

49.     Section 6-1(a)(7)(A)(xiv) is unconstitutionally vague and arbitrary in that it contains only the term "SLG 95." Failure to name the manufacturer or the caliber of the firearm make it impossible to know what is proscribed, and Plaintiffs must guess at the vague meaning of this term.

50.     Section 6-1(a)(7)(A)(xv) is unconstitutionally vague and arbitrary in that it contains only the term "SLR 95 or 96." The failure to name manufacturers, model or caliber makes it impossible to know what is proscribed, and Plaintiffs must guess at the vague meaning of this term.

51.     The amended ordinance provides for three (3) methods of complying with its provisions—provided they are effectuated within ninety (90) days from the effective date of the ordinance as amended. Section 6-2(d)(1)(2)(3).

52.     Because there is no stated effective date of the ordinance as amended, as a matter of law, the effective date is that date the law was passed—that is, November 14, 2007.

53.     The amount of time given within which a "modification" can be effectuated is insufficient, and plaintiffs did not learn of the passage of the amendments until after ninety (90) days had passed.

54.     The amended ordinance sub-section (d)(2) at Section 6-2 is unconstitutionally vague and underinclusive in that it states one of the acts a citizen must perform to avoid arrest and prosecution for possession of an "assault weapon," or "large capacity magazine" (as purportedly defined in the amended language), to wit:

ELECTRONICALLY FILED
7/28/2017 8:30 AM
2017-CH-10345
PAGE 15 of 25

15

ELECTRONICALLY FILED
7/28/2017 8:30 AM
2017-CH-10345
PAGE 16 of 25

To *modify* the assault weapon or large capacity magazine either to render it permanently inoperable or to permanently make it a device no longer defined as an assault weapon or large capacity magazine . . . [Underscoring added.]

55.   "To modify" is underinclusive and vague in that "modification" of a firearm can involve a myriad of components, and skill not possessed by persons of ordinary intelligence, such as Plaintiffs, and the amended ordinance fails to state whether the "modification" may be effectuated by a gunsmith, whereby, in many cases the owner would have to wait weeks to months before retrieving a "modified" firearm.

56.   Because plaintiffs are unable to determine with exactness, and must "guess" at the meaning of the amended ordinance definitions as they may apply to the various firearms they own, including some of those previously stated: (i) M-1 Carbine, (ii) M-1 Garand (iii) MAS 49/56 rifle, (iv) Romak 3 rifle, (v) Walther P99 pistol, (vi) Smith & Wesson 99 pistol, (vii) Egyptian Hakim rifle, and (viii) Swedish AG42B rifle, each of them has to "guess" whether or not his firearms require "modification," and what "modification" would satisfy the ordinance language to "make it a device no longer defined as an assault weapon or large capacity magazine." [Emphasis added.]

<u>COUNT II - THE ORDINANCE AS AMENDED VIOLATES DUE PROCESS IN THAT IT FAILS TO PROVIDE A SCIENTER REQUIREMENT, THEREBY IMPOSING STRICT LIABILITY TO ITS VAGUE "ASSAULT WEAPON" DEFINITION (PRESERVED FOR APPEAL).</u>

1-15.   Plaintiffs reassert and reallege paragraphs 1 through 15, above, as Plaintiffs' paragraphs 1 through 15 of this Count II.

16

16.    The Cook County Assault Weapons Ordinance, as amended and adopted on November 14, 2006, violates the due process clause of the U.S. Constitution, as applied to the States by the 14th Amendment, by (i) failing to provide a scienter requirement, thereby imposing "strict liability" for possession of firearms included under its vague definition of "assault weapon." (ii) Said ordinance further violates the constitutional requirement that a law give fair warning of that which it prohibits.

17.    The subject Ordinance as amended at Section 6-1(a)(6) conflicts with federal law regarding a "conversion kit" that require a "*mens rea*" element to constitute a violation.

18.    There exists in the firearm market various firearm parts that are called "parts kits" that can be purchased by Plaintiffs, without any knowledge that they can assemble an "assault weapon" from said part or parts within the vague meaning thereof in the amended ordinance, so that they, and others similarly situated, upon purchase of these so-called "conversion kit, part, or parts" would be subjected to arrest and criminal prosecution because the amendment language defining "assault weapons" fails to provide sufficient information to enable a person of average intelligence to determine whether a particular combination of parts is within the ordinance coverage.

19.    Because of its criminal proscriptions, without a scienter requirement, relatively stringent review of the County's assault weapon ban is necessary.

20.    Because the amended ordinance imposes strict liability, and its

ELECTRONICALLY FILED
7/28/2017 8:30 AM
2017-CH-10345
PAGE 17 of 25

definitions of "assault weapon" are vague, as hereinabove noted, it violates the constitutional requirement that a law give fair warning of that which it prohibits.

## COUNT III - THE ORDINANCE IS OVERBROAD IN ITS APPLICATIONS AND THEREBY VIOLATES DUE PROCESS (PRESERVED FOR APPEAL).

1-15.   Plaintiffs reassert and reallege paragraphs 1 through 15, above, as paragraphs 1 through 15 of this Count III.

16.     Cook County Assault Weapons Ordinance, as amended and adopted on November 14, 2006, violates the due process clause of the U.S. Constitution, as applied to the States by the 14th Amendment, because it is overbroad so as to render it arbitrary, capricious and unreasonable in its application, to wit:

17.     The amended ordinance reaches far beyond the evil which it purportedly addresses—that is, the use of certain firearms by criminals who constitute a narrow class of such users, as compared to the multitude of users, such as the Plaintiffs, who legally possess these type of firearms for lawful purposes of self-defense in their homes, and for hunting and shooting competition.

18.     The ordinance as amended is so overbroad that it will by virtue of the vague definitions contained therein, prohibit the possession of various firearms that could not rationally be considered to be "assault weapons" and that would presumably fall outside the scope of the Ordinance's intended purpose. For instance, the M1 Carbine possessed by Plaintiff Edhlund is a semi-automatic rifle with a detachable magazine, and due to the vague definitions in the ordinance, it could be considered to have both a pistol grip and a shroud over the barrel, potentially resulting in the M1 Carbine being a prohibited firearm. *See* Plaintiffs Exhibit E(a).

ELECTRONICALLY FILED
7/28/2017 8:30 AM
2017-CH-10345
PAGE 18 of 25

18

19. The Winchester Super X rifle and the Browning BAR rifle are semi-automatic rifles with detachable magazines, and because of the vague definitions in the ordinance as amended, they could be considered "assault weapons" since they arguably have both a protruding grip and a shroud that partially encircles the barrel. A citizen possessing either of these rifles would not likely believe he or she owned as "assault rifle" subjecting one to prosecution under the amended ordinance. *See* Plaintiffs Exhibit E(b).

## COUNT IV - THE ORDINANCE IN ITS APPLICATION VIOLATES PLAINTIFFS' INDIVIDUAL RIGHT TO KEEP AND BEAR ARMS.

1-15. Plaintiffs reassert and reallege paragraphs 1 through 15, above, as paragraphs 1 through 15 of this Count IV.

16. Prior to the enactment of the subject Ordinance as amended, and currently, the Plaintiff gun owners, within Cook County's jurisdiction, have abided by the existing gun laws within their respective municipalities, the County and the State of Illinois, and all have been law-abiding gun owners exercising their fundamental right to keep and bear arms, and to protect their person and that of their respective family members, within the confines of their homes by retaining in their respective possession and control various firearms legally acquired in compliance with the Illinois' FOID Act (430 ILCS 65/1 *et seq.*), and as guaranteed under state and federal law. See 720 ILCS 5/7-1 (Use of force in defense of person); 720 ILCS 5/7-2 (Use of force in defense of dwelling); 720 ILCS 517-3 (Use of force in defense of other property); 720 ILCS 517-6 (Private person's use of force in making arrest); 720 ILCS 5/7-8 (Force likely to cause death or great bodily harm); 720 ILCS

ELECTRONICALLY FILED
7/28/2017 8:30 AM
2017-CH-10345
PAGE 19 of 25

19

5/7-14 (Affirmative defense); Article 1, Section 22, Illinois Constitution; U.S Const. Amend II, XIV.

17.     The challenged Ordinances violate the Plaintiffs' fundamental right to self-defense and defense of family with arms that are "in common use," and are "typically possessed by law-abiding persons for lawful purposes," which is a right guaranteed by the Second and Fourteenth Amendments to the United States Constitution, and must therefore be preliminarily and permanently enjoined.

## COUNT V - THE COUNTY'S UNCONSTITUTIONAL EXERCISE OF ITS POLICE POWERS VIOLATES DUE PROCESS (PRESERVED FOR APPEAL).

1-15.   Plaintiffs reassert and reallege paragraphs 1 through 15, above, as paragraphs 1 through 15 of this Count V.

16.     The Due Process rights of Plaintiffs have been violated in that the subject Ordinance as amended, pursuant to the County's unconstitutional exercise of its police powers, mandates Plaintiffs removing, modifying, rendering permanently inoperable, or otherwise forfeiting conventional semi-automatic firearms to satisfy the capricious and arbitrary provisions of said amended ordinance, absent any reasonable guidance for enforcement by law enforcement personnel.

17.     The Plaintiffs are denied due process in that the provisions of the Ordinance relating to definitions of "Assault Weapons" and their varied components, including definitions herein above enumerated, are so vague that the Ordinance arbitrarily and capriciously bans ordinary rifles and shotguns that are types of firearms that have been in use for almost 150 years, and the Plaintiffs as

ELECTRONICALLY FILED
7/28/2017 8:30 AM
2017-CH-10345
PAGE 20 of 25

20

owners of those types of firearms must guess at the meaning of the Ordinance amendments.

18.     The Ordinance is unconstitutionally vague in that (i) it fails to give notice to persons of ordinary intelligence, Plaintiffs, and others similarly situated, that certain conduct is prohibited under its provisions, and (ii) it fails to give any guidance to the interpretation of the various "assault weapon" components, and in that regard it fails to provide sufficiently definite standards for law enforcement officer fact finders that its application does not depend merely on their private conceptions.

19.     Because of the complexities involved in gunsmithing, even those firearms that may have been modified by a Plaintiff, or others similarly situated, in an attempt to satisfy the Ordinance provisions, are likely to be deemed illegal by law enforcement personnel.

20.     The average law enforcement officers—absent any guidance in the text of the amended ordinance-- viewing such "modified" firearms, without special knowledge, may focus their attention, and thereby their perception, on outward appearances, and either have to confiscate the firearm for further scrutiny, or otherwise guess at whether its modification satisfies or does not satisfy the Ordinance's definition of an "assault weapon."

21.     The problems law enforcement officers will encounter when viewing a firearm that has not been modified by a Plaintiff, or other similarly-situated citizen,

ELECTRONICALLY FILED
7/28/2017 8:30 AM
2017-CH-10345
PAGE 21 of 25

21

because of the vagueness in the statute, will likely lead him or her to mistakenly believe the subject firearm is an "assault weapon."

22.     Without any standards, or guidance in the text of the amended ordinance, for law enforcement officers to support their private conceptions, they are left with just that—private conceptions, and nothing more, leaving the gun owner to the mercy of the law enforcement officers' "perceived" finding as to whether or not the long rifle, shotgun or other firearm is in fact an "assault weapon."

23.     The Ordinance, in failing to provide a reasonable method of achieving its stated objectives, is not a legitimate exercise of the police power under the Illinois Constitution.

## COUNT VI · EQUAL PROTECTION (PRESERVED FOR APPEAL)

1-15.   Plaintiffs reassert and reallege paragraphs 1 through 15, above, as paragraphs 1 through 15 of this Count VI.

16.     Section 6-1(a)(7) of the amended Ordinance contains the language "Shall include but not be limited to, the assault weapons models identified as follows: (A) The following rifles or copies or duplicates thereof."

17.     This section prohibits certain firearms based not on any particular characteristics, but by name. Certain named firearms are banned along with any firearms that may be determined to be "copies or duplicates" of the named firearms.

18.     This Section violates the equal protection clause of the U.S. Constitution, as applied by the States by the 14th Amendment, by arbitrarily

ELECTRONICALLY FILED
7/28/2017 8:30 AM
2017-CH-10345
PAGE 22 of 25

22

differentiating between identically-situated persons by banning specifically listed "assault weapons" but not banning ownership of other identical firearms, to wit:

(a.) AR-15, Bushmaster XM-15, Armalite M15, or Olympic Arms PCR: there are a number of firearms which are not "copies or duplicates" of these banned firearms, yet identical in function. The Stag Arms Company makes a line of rifles which appear to be identical to an AR-15, but feature modifications which make them easier for left-handed shooters to use. *See* Plaintiffs' Exhibit D. These include a modification that ejects spent casings to the left, as opposed to the right.

(b.) Functionally, the Stag Arms rifle is identical to a standard AR-15, yet the Stag Arms rifle could not be considered a "copy or duplicate" of a standard AR-15, thus, a person who owns a Stag Arms rifle is treated differently under this section than a person who owns a functionally identical Bushmaster.

(c.) Various manufacturers are making rifles that are visually and functionally identical to banned AR-15s, yet use different caliber ammunition. Since such a rifle could not be considered a "copy or duplicate," the owner thereof would not run afoul of this section, while the owner of a visually and functionally identical AR-15 would face criminal prosecution.

(d.) Some manufacturers, such as the Land Warfare Resources Corporation, are producing rifles that are visually identical to a standard AR-15, and use the same caliber ammunition, yet employ a different internal mechanism (a "gas piston") that allows the rifle to fire semi-automatically

ELECTRONICALLY FILED
7/28/2017 8:30 AM
2017-CH-10345
PAGE 23 of 25

23

(*See* Plaintiffs' Exhibit E). Due to the different operating mechanism, these rifles could not be considered copies or duplicates, and would not be prohibited by this section despite having the same appearance, firing the same ammunition, and using the same magazines as the prohibited firearms. (e.) Sturm, Ruger Mini-14: while the Mini-14 is banned by name, the Ruger Mini-30 is not. The Mini-30 is visually identical to, and mechanically very similar to, the Mini-14, yet employs different caliber ammunition, and thus, it could not be considered a "copy or duplicate." An owner of a Mini-14 would face prosecution under this section, yet the owner of a Mini-30 would not. *See* Plaintiffs' Exhibit F.

19.     Owners of specifically enumerated firearms will suffer the indignities of prosecution and confiscation of firearms owned or possessed in compliance with the State of Illinois FOID Act, (430 ILCS 65/1, *et seq.*), because of the arbitrary classification of their firearms under this Section that is not rationally related to any legitimate government purpose.

20.     Unlike those statutes and/or Ordinances that may classify or otherwise draw a distinction between violent felony offenders and non-violent offenders that have been held non-offensive of the doctrine of equal protection under the laws, Section 6-1(a)(7) arbitrarily creates two classes of gun owners; those who own firearms that are specifically named as prohibited, and those who own firearms that are functionally identical yet not specifically named. Gun owners whose firearms are named will be forced to give up their previously legally-possessed firearms or

ELECTRONICALLY FILED
7/28/2017 8:30 AM
2017-CH-10345
PAGE 24 of 25

face criminal sanctions, while the owners of firearms that are not named will not run afoul of this section.

WHEREFORE: Plaintiffs pray that it would serve the public interest best if this Honorable Court would issue a permanent injunction, without bond required of the Plaintiffs, inasmuch as the Ordinance as it stands is an unconstitutional exercise of Cook County's Home Rule police powers, depriving the Plaintiffs and countless law-abiding citizens of their Constitutional rights, and:

1. Enter its Order declaring the subject Ordinance unconstitutional and unenforceable;

2. Issue its Order permanently, enjoining the County of Cook from enforcing the subject Ordinance;

3. Enter its Order awarding the Plaintiffs their costs incurred herein, and

4. Enter its Order granting such other and further relief as this court deems necessary and appropriate.

ELECTRONICALLY FILED
7/28/2017 8:30 AM
2017-CH-10345
PAGE 25 of 25

Date: July 28, 2017                              /s/ David G. Sigale
                                          Attorney for Plaintiffs

David G. Sigale
LAW FIRM OF DAVID G. SIGALE, P.C.
799 Roosevelt Road, Suite 207
Glen Ellyn, IL 60137
630.452.4547
Atty. ID# 43762

ELECTRONICALLY FILED
9/28/2017 8:30 AM
2017-CH-10345
CALENDAR: 08
PAGE 1 of 6
CIRCUIT COURT OF
COOK COUNTY, ILLINOIS
CHANCERY DIVISION
CLERK DOROTHY BROWN

# PLAINTIFFS' EXHIBIT A

# 5 Pages

*PLAINTIFFS EX. A*

ELECTRONICALLY FILED
7/28/2017 8:30 AM
2017-CH-10345
PAGE 2 of 6

06-O-50
## ORDINANCE

Sponsored by

### THE HONORABLE LARRY SUFFREDIN, COUNTY COMMISSIONER

Co-Sponsored by

### THE HONORABLE JOHN P. DALEY AND JOAN PATRICIA MURPHY

#### COUNTY COMMISSIONERS

### AMENDMENT TO THE
### "COOK COUNTY DEADLY WEAPONS DEALER CONTROL ORDINANCE"

**WHEREAS,** the Federal assault weapons ban, of the Violent Crime Control and Law Enforcement Act of 1994, as amended, 18 USC Sec. 921 et seq. expired on September 13, 2004; and

**WHEREAS,** the County Board desires to (1) amend Ordinance 93-O-37, as amended by Ordinance 93-O-46 and Ordinance 99-O-27, Article I, Section 1-2 by striking and deleting language in section 1-2; and (2) amend Ordinance 93-O-37, as amended by Ordinance 93-O-46 and Ordinance 99-O-27, Article VI, by deleting and adding language as stricken through and underlined below.

**NOW, THEREFORE, PURSUANT TO THE HOME RULE AUTHORITY OF THE COOK COUNTY BOARD OF COMMISSIONERS, AS VESTED IN IT BY THE ILLINOIS CONSTITUTION OF 1970, HEREBY AMEND PORTIONS OF THE ORDINANCE, AS FOLLOWS:**

### ARTICLE I. GENERAL PROVISIONS

**Section 1-2    Applicability.**

(a) This article shall control the licensing of all firearms dealers within Cook County except in home rule municipalities which have a separate municipal ordinance specifically regulating the licensing of firearms dealers.

(b) Pursuant to Article VII, Section 6(c) of the 1970 Constitution of the State of Illinois, if this article conflicts with an ordinance of a home rule municipality, the municipal ordinance shall prevail within its jurisdiction.

### ARTICLE VI. ASSAULT WEAPONS BAN

**Section 6-1    Definitions.**

As used in Article VI of this Ordinance, the following terms shall have the following meaning:

(a) "Assault weapon" means:

(1)    A semiautomatic rifle that has the capacity to accept a large capacity magazine detachable or otherwise and one or more of the following:

ELECTRONICALLY FILED
7/28/2017 8:30 AM
2017-CH-10345
PAGE 3 of 6

(A)    Only a pistol grip without a stock attached;

(B)    Any feature capable of functioning as a protruding grip that can be held by the non-trigger hand;

(C)    A folding, telescoping or thumbhole stock;

(D)    A shroud attached to the barrel, or that partially or completely encircles the barrel, allowing the bearer to hold the firearm with the non-trigger hand without being burned, but excluding a slide that encloses the barrel; or

(E)    A muzzle brake or muzzle compensator;

(2)    A semiautomatic pistol or any semi-automatic rifle that has a fixed magazine, that has the capacity to accept more than 10 rounds of ammunition;

(3)    A semiautomatic pistol that has the capacity to accept a detachable magazine and has one or more of the following:

(A)    Any feature capable of functioning as a protruding grip that can be held by the non-trigger hand;

(B)    A folding, telescoping or thumbhole stock;

(C)    A shroud attached to the barrel, or that partially or completely encircles the barrel, allowing the bearer to hold the firearm with the non-trigger hand without being burned, but excluding a slide that encloses the barrel;

(D)    A muzzle brake or muzzle compensator; or

(E)    The capacity to accept a detachable magazine at some location outside of the pistol grip.

(4)    A semiautomatic shotgun that has one or more of the following:

(A)    Only a pistol grip without a stock attached;

(B)    Any feature capable of functioning as a protruding grip that can be held by the non-trigger hand;

(C)    A folding, telescoping or thumbhole stock;

(D)    A fixed magazine capacity in excess of 5 rounds; or

(E)    An ability to accept a detachable magazine;

(5)    Any shotgun with a revolving cylinder.

(6)    Conversion kit, part or combination of parts, from which an assault weapon can be assembled if those parts are in the possession or under the control of the same person;

(7)    Shall include, but not be limited to, the assault weapons models identified as follows:

    (A)    The following rifles or copies or duplicates thereof:

        (i)    AK, AKM, AKS, AK-47, AK-74, ARM, MAK90, Misr, NHM 90, NHM 91, SA 85, SA 93, VEPR;

        (ii)    AR-10;

        (iii)    AR-15, Bushmaster XM15, Armalite M15, or Olympic Arms PCR;

        (iv)    AR70;

        (v)    Calico Liberty;

        (vi)    Dragunov SVD Sniper Rifle or Dragunov SVU;

        (vii)    Fabrique National FN/FAL, FN/LAR, or FNC;

        (viii)    Hi-Point Carbine;

        (ix)    HK-91, HK-93, HK-94, or HK-PSG-1;

        (x)    Kel-Tec Sub Rifle;

        (xi)    Saiga;

        (xii)    SAR-8, SAR-4800;

        (xiii)    SKS with detachable magazine;

        (xiv)    SLG 95;

        (xv)    SLR 95 or 96;

        (xvi)    Steyr AUG;

        (xvii)    Sturm, Ruger Mini-14;

        (xviii)    Tavor;

        (xix)    Thompson 1927, Thompson M1, or Thompson 1927 Commando; or

        (xx)    Uzi, Galil and Uzi Sporter, Galil Sporter, or Galil Sniper Rifle (Galatz).

    (B)    The following pistols or copies or duplicates thereof:

        (i)    Calico M-110;

ELECTRONICALLY FILED
7/28/2017 8:30 AM
2017-CH-10345
PAGE 4 of 6

- 3 -

ELECTRONICALLY FILED
7/28/2017 8:30 AM
2017-CH-10345
PAGE 5 of 6

    (ii)     MAC-10, MAC-11, or MPA3;

    (iii)    Olympic Arms OA;

    (iv)    TEC-9, TEC-DC9, TEC-22 Scorpion, or AB-10; or

    (v)     Uzi.

  (C)    The following shotguns or copies or duplicates thereof:

    (i)     Armscor 30 BG;

    (ii)    SPAS 12 or LAW 12;

    (iii)    Striker 12; or

    (iv)    Streetsweeper.

(b) "Assault weapon" does not include any firearm that has been made permanently inoperable, or satisfies the definition of "antique firearm," stated in this Ordinance, or weapons designed for Olympic target shooting events.

(c) "Detachable magazine" means any ammunition feeding device, the function of which is to deliver one or more ammunition cartridges into the firing chamber, which can be removed from the firearm without the use of any tool, including a bullet or ammunition cartridge.

(d) "Large capacity magazine" means any ammunition feeding device with the capacity to accept more than 10 rounds, but shall not be construed to include the following:

  (1)    A feeding device that has been permanently altered so that it cannot accommodate more than 10 rounds.

  (2)    A 22 caliber tube ammunition feeding device.

  (3)    A tubular magazine that is contained in a lever-action firearm.

(e) "Muzzle brake" means a device attached to the muzzle of a weapon that utilizes escaping gas to reduce recoil.

(f) "Muzzle compensator" means a device attached to the muzzle of a weapon that utilizes escaping gas to control muzzle movement.

**Section 6-2    Assault weapons and large capacity magazines - Sale prohibited - Exceptions.**

(a)    No person shall manufacture, sell, offer or display for sale, give, lend, transfer ownership of, acquire or possess any assault weapon or large capacity magazine. This subsection shall not apply to:

-4-

ELECTRONICALLY FILED
7/28/2017 8:30 AM
2017-CH-10345
PAGE 6 of 6

(1)    the sale or transfer to, or possession by any officer, agent, or employee of Cook County or any other municipality or state or of the United States, members of the armed forces of the United States; or the organized militia of this or any other state; or peace officers to the extent that any such person named in this subsection is otherwise authorized to acquire or possess an assault weapon and/or large capacity magazine and does so while acting within the scope of his or her duties;

(2)    transportation of assault weapons or large capacity magazine if such weapons are broken down and in a non-functioning state and are not immediately accessible to any person.

(b)    Any assault weapon or large capacity magazine possessed, sold or transferred in violation of subsection (a) of this section is hereby declared to be contraband and shall be seized and disposed of in accordance with the provisions of Section 6-2 of this Ordinance.

(c)    Any person found in violation of this section shall be sentenced to not more than six months imprisonment or fined not less than $500.00 and not more than $1,000.00, or both.

(d)    Any person who, prior to the effective date of the ordinance codified in this Ordinance, was legally in possession of an assault weapon or large capacity magazine prohibited by this section shall have 90 days from the effective date of the ordinance to do any of the following without being subject to prosecution hereunder:

(1)    To remove the assault weapon or large capacity magazine from within the limits of the County of Cook; or

(2)    To modify the assault weapon or large capacity magazine either to render it permanently inoperable or to permanently make it a device no longer defined as an assault weapon or large capacity magazine; or

(3)    To surrender the assault weapon or large capacity magazine to the Sheriff or his designee for disposal as provided below.

**Section 6-3    Destruction of weapons confiscated.**

Whenever any firearm or large capacity magazine is surrendered or confiscated pursuant to the terms of this Ordinance, the Sheriff shall ascertain whether such firearm is needed as evidence in any matter.

If such firearm or large capacity magazine is not required for evidence it shall be destroyed at the direction of the Sheriff. A record of the date and method of destruction an inventory or the firearm or large capacity magazine so destroyed shall be maintained.

Approved and adopted this 14th day of November 2006.

**BOBBIE L. STEELE,** President
Cook County Board of Commissioners

(S E A L)

Attest:
**DAVID ORR,** County Clerk

APPROVED AS AMENDED
BY THE BOARD OF COOK COUNTY COMMISSIONERS

NOV 1 4 2006

COM _____

ELECTRONICALLY FILED
9/28/2017 8:30 AM
2002-CH-10345
CALENDAR: 08
PAGE 1 of 14
CIRCUIT COURT OF
COOK COUNTY, ILLINOIS
CHANCERY DIVISION
CLERK DOROTHY BROWN

# PLAINTIFFS GROUP
# EXHIBIT B

# 9 Pages

*Your continued donations keep Wikipedia running!*

# Image:M1 Carbine.jpg

From Wikipedia, the free encyclopedia

- Image
- File history
- File links



M1 Cal. .30 Carbine

No higher resolution available.
M1_Carbine.jpg (617 × 138 pixel, file size: 14 KB, MIME type: image/jpeg)

ELECTRONICALLY FILED
7/28/2017 8:30 AM
2017-CH-10345
PAGE 2 of 14

Plaintiff's Group Exhibit "B"   Page 1
of 4

*Wikipedia is sustained by people like you. Please **donate** today.*

# Image:Garand.jpg

From Wikipedia, the free encyclopedia

- Image
- File history
- File links



No higher resolution available.
Garand.jpg (549 × 105 pixel, file size: 9 KB, MIME type: image/jpeg)

ELECTRONICALLY FILED
7/28/2017 8:30 AM
2017-CH-10345
PAGE 3 of 14

**M1 GARAND  30 CAL. SEMI-AUTOMATIC  RIFLE**



**French MAS 49/56**

ELECTRONICALLY FILED
7/28/2017 8:30 AM
2017-CH-10345
PAGE 4 of 14

Plaintiff's Group Exhibit "B"   Page 3
of 9

*Help us improve Wikipedia by supporting it financially.*

# Image:Rifle Hakim.jpg

From Wikipedia, the free encyclopedia

- Image
- File history
- File links



Size of this preview: 800 × 168 pixels
Full resolution (1594 × 334 pixel, file size: 295 KB, MIME type: image/jpeg)

ELECTRONICALLY FILED
7/28/2017 8:30 AM
2017-CH-10345
PAGE 5 of 14





*figure 1*

| Caliber. | 6.5x55 mm |
|---|---|
| System of operation | Semi-Auto |
| Length overall. | 47.48 inches |
| Barrel length. | 21.7 inch. |
| Feed device | 10 rnd detachable box magazine |
| Sight Front | Blade type with hood |
| Sight Rear. | Drum type sight |
| Weight. | 9.15 lb. |
| Muzzle velocity. | 2460 fps. |

ELECTRONICALLY FILED
7/28/2017 8:30 AM
2017-CH-10345
PAGE 6 of 14



Achtung ar collector box.

## AG42B SEMI-AUTO RIFLE

ELECTRONICALLY FILED
7/28/2017 8:30 AM
2017-CH-10345
PAGE 7 of 14

## ROMAK 3 SEMI-AUTOMATIC RIFLE WITH TARGET SCOPE

Martros Database

Trouble Shooting

Links

- TUTORIALS -

Bolt Disassembly

Butt Stock Tool Kit



Caliber: 7.62*5
Double Stack: ——

A Romak 3 with 10 round magazine



ELECTRONICALLY FILED
7/28/2017 8:30 AM
2017-CH-10345
PAGE 8 of 14

**SMITH & WESSON 99 IN .40 CALIBER**



The hunting version of the P99



Various engraved versions of the P99

ELECTRONICALLY FILED
7/28/2017 8:30 AM
2017-CH-10345
PAGE 9 of 14

## WALTHER P99

The double-action Walther P99 pistol originates from 1996. This weapon is available in 9 mm Para (16 rounds) and .40 S&W (12 rounds) caliber. The P99 has a number of special distinguishing features. A large button is located at the back of the slide to uncock the cocked firing pin after loading. The cartridge extractor is on the right-hand side of the slide. When a cartridge is in the chamber, the cartridge extractor stands slightly proud, displaying a red dot. When the firing pin is cocked, a pin carrying a red dot protrudes from the back of the slide. Finally the back of the grip on the composite frame can be altered using interchangeable adapter pieces of different sizes. The ambidextrous magazine release is at in the back of the trigger guard. The takedown lever and slide catch are on the left-hand side of the frame. Rails for mounting special accessories are fitted at the front and on both sides of the composite frame. This pistol has an improved Browning-Petter locking, with a locking lug under the barrel chamber block. The chamber block locks into the ejection port in the slide. The standard P99 has a mat black finish and has been designed as a police pistol. The P99 in 9 mm Para caliber has a total length of 180 mm (7 in). The height of this weapon is 135 mm (5$^1$/4 in) and the width is 29 mm (1$^1$/4 in). The barrel length is 102 mm (4 in) and this weapon weighs 630 g (22$^1$/2 oz). The trigger pressure is 4000 g (8$^3$/4 lb) in double-action and 2000 g (4$^1$/2 lb) in single-action. The same weapon in .40 S&W caliber has slightly different dimensions. The total length is 184 mm (7$^1$/4 in) and the barrel length is 106 mm (4$^1$/4 in). The weight is 655 g (23 oz).

Plaintiff's Group Exhibit "B"  Page 8 of 9



Model 22A Sport with
Hi-Viz bead of 2001

ELECTRONICALLY FILED
7/28/2017 8:30 AM
2017-CH-10345
PAGE 10 of 14

**MODEL 22A SPORT:** The Smith & Wesson 22A Sport is the successor of the model 2214 and came on the market in 1997. This 10-shot pistol in .22 LR caliber is available with a 102 (4 in), 140 (5¹/₂ in) or a 178 mm (7 in) barrel. The total length is 203, 241 or 279 mm (8, 9¹/₂ or 11 in) respectively. The weights according to the barrel lengths are 794, 907 or 936 g. (28, 32 or 33 oz) respectively. This totally blued weapon has an alloy frame and a blued stainless steel slide. The safety catch is located on the left-hand side of the frame, above the grip. In addition, it has an adjustable rear sight and a two-part polymer grip. Around the same time, the Target version was introduced with a heavier, so-called bull barrel of 140 mm (5¹/₂ in). The total length of the Target is 241 mm (9¹/₂ in) and it weighs 1106 g (39 oz). The grip of this target model has a wood laminate or composite grip with a rib for a thumb support. The model 22A Sport is still manufactured. In 2001, Smith & Wesson introduced a new version of the 22A Sport Target. This type is almost identical to the older Target, but has a Hi-Viz front sight, with a special green composite light sensitive sighting bar.

ELECTRONICALLY FILED
7/28/2017 8:50 AM
2017-CH-10345
PAGE 11 of 74

# PLAINTIFFS'
# GROUP EXHIBIT
# B(a)

# 3 Pages

Case 1:17-cv-07092 Document #: 2-1 Filed: 09/29/17 Page 48 of 68 PageID #:54

# Winchester Self-Loading Rifle, Model 1905.

*"Take-Down." Made For .32 And .35 Caliber Winchester S. L. Cartridges.*



*Plain Finished, Model 1905 Rifle.*

Twenty-two Inch Round Barrel, Plain Trigger, Pistol Grip Stock of Plain Walnut not Checked, Weight about 7½ pounds, Magazine Capacity 5, .................................................................$26.00



*Fancy Finished, Model 1905 Rifle.*

Twenty-two Inch Round Barrel, Plain Trigger, Pistol Grip Stock and Forearm of Fancy Walnut, Checked, Weight about 8 pounds, Magazine Capacity 5, ...............................................$44.00


MODEL 1905

# Winchester Self-Loading Rifle, Model 1907.

*"Take-Down," Made For .351 Winchester Self-Loading Cartridges.*

MODEL 1907



*Plain Finished, Model 1907 Rifle.*

Twenty Inch Round Nickel Steel Barrel, Plain Trigger, Pistol Grip Stock of Plain Walnut, not Checked, Weight about 7¾ pounds, Magazine Capacity 5, ...............................................$28.00



*Fancy Finished, Model 1907 Rifle.*

Twenty Inch Round Nickel Steel Barrel, Plain Trigger, Pistol Grip Stock and Forearm of Fancy Walnut, Checked, Weight about 8 pounds, Magazine Capacity 5, .....................................$46.00

For Extras see page 96.

ELECTRONICALLY FILED
7/28/2017 8:30 AM
2017-CH-10345
PAGE 12 of 14

Plaintiff's Group Exhibit "B(a)" Page 1 of 3

Case: 1:17-cv-07002 Document #: 2-1 Filed: 09/28/17 Page 49 of 68 PageID #:55



# Winchester Self-Loading Rifle, Model 1910.
### "Take-Down," Made For .401 Winchester Self-Loading Cartridges.



*Plain Finished, Model 1910 Rifle.*

Twenty Inch Round Nickel Steel Barrel, Plain Trigger, Pistol Grip Stock of Plain Walnut, not Checked, Weight about 8¼ pounds, Magazine Capacity 4, .................................................................... $30.00



*Fancy Finished, Model 1910 Rifle.*

Twenty Inch Round Nickel Steel Barrel, Plain Trigger, Pistol Grip Stock and Forearm of Fancy Walnut, Checked, Weight about 8¼ pounds, Magazine Capacity 4, .................................................................... $48.00

For Extras, see page 96.

92

ELECTRONICALLY FILED
7/28/2017 8:30 AM
2017-CH-10345
PAGE 13 of 14

Plaintiff's Group Exhibit "B(a) Page 2of3



Browning BAR Longtrack

Winchester Super X Rifle

ELECTRONICALLY FILED
7/28/2017 8:30 AM
2017-CH-10345
PAGE 14 of 14

Plaintiff's Group Exhibit "B(a)" Page 3of3

ELECTRONICALLY FILED
8/28/2017 8:50 AM
2017-CH-10345
CALENDAR: 08
PAGE 1 of 6
CIRCUIT COURT OF
COOK COUNTY, ILLINOIS
CHANCERY DIVISION
CLERK DOROTHY BROWN

# PLAINTIFFS'
# GROUP EXHIBIT
# C

# 5 Pages



Old Town Station, Ltd. - Armchair Gun Room

**BROWNING SEMI-AUTO 5 LIGHTWEIGHT 20 GUAGE SHOTGUN**

ELECTRONICALLY FILED
7/28/2017 8:30 AM
2017-CH-10345
PAGE 2 of 6

**PLAINTIFFS' GROUP EXHIBIT C (SEMI-AUTO SHOTGUNS)**

**PAGE 1 OF 5**

**Town Station, Ltd. - ArmchairGunShow.com**

**REMINGTON MODEL 11 SEMI-AUTO SHOTGUN**

ELECTRONICALLY FILED
7/28/2017 8:30 AM
2017-CH-10345
PAGE 3 of 6

**PLAINTIFFS' GROUP EXHIBIT C (SEMI-AUTO SHOTGUNS)**

**PAGE 2 OF 5**



Old Town Station, Ltd. - ArmchairGunShow.com

**COLT SEMI-AUTO 12 GUAGE SHOTGUN**

ELECTRONICALLY FILED
7/28/2017 8:30 AM
2017-CH-10945
PAGE 4 of 6

**PLAINTIFFS' GROUP EXHIBIT C (SEMI-AUTO SHOTGUNS)**

**PAGE 3 OF 5**

Town Station, Ltd. - ArmchairGunShow.com

**J.C HIGGINS MODEL 60 SEARS SEMI-AUTO SHOTGUN**

ELECTRONICALLY FILED
7/28/2017 8:30 AM
2017-CH-10345
PAGE 5 of 6

**PLAINTIFFS' GROUP EXHIBIT C (SEMI-AUTO SHOTGUNS)**

**PAGE 4 OF 5**

# Image:Browning Auto-5 20g Mag.jpg

*Your continued donations keep Wikipedia running!*

- Image
- File history
- File links
- Metadata



ELECTRONICALLY FILED
7/28/2017 8:30 AM
2017-CH-10345
PAGE 6 of 6

**PLAINTIFFS' GROUP EXHIBIT C (SEMI-AUTO SHOTGUNS)**

**PAGE 5 OF 5**

ELECTRONICALLY FILED
8/9/2016 10:48 AM
2015-CH-10345
CALENDAR: 08
PAGE 1 of 12
CIRCUIT COURT OF
COOK COUNTY, ILLINOIS
CHANCERY DIVISION
CLERK DOROTHY BROWN

# PLAINTIFFS'
# EXHIBIT D



Bushmaster XM15

ELECTRONICALLY FILED
7/28/2017 8:30 AM
2017-CH-10345
PAGE 2 of 2

Stag Arms Stag-15L



**PLAINTIFFFS' EXHIBIT D**

ELECTRONICALLY FILED
7/28/2017 8:40 AM
2017-CH-10345
CALENDAR: 08
PAGE 1 of 3
CIRCUIT COURT OF
COOK COUNTY, ILLINOIS
CHANCERY DIVISION
CLERK DOROTHY BROWN

# PLAINTIFFS'
# EXHIBIT E

# 2 Pages

# LWRC M6A2 GAS PISTON SEMIAUTOMATIC RIFLE



ELECTRONICALLY FILED
7/28/2017 8:30 AM
2017-CH-10345
PAGE 2 of 3

Plaintiff's Exhibit "E"    Page 1 of 2



ELECTRONICALLY FILED
7/28/2017 8:30 AM
2017-CH-10145
CALENDAR '08
PAGE 1 of 2
CIRCUIT COURT OF
COOK COUNTY, ILLINOIS
CHANCERY DIVISION
CLERK DOROTHY BROWN

# PLAINTIFFS'
# EXHIBIT E(a)

# Image:M1 Carbine.

- Image
- File history
- File links



M1 Cal. .30 Carbine

ELECTRONICALLY FILED
7/28/2017 8:30 AM
2017-CH-10345
PAGE 2 of 2

**Plaintiffs Exhibit E(a)**

ELECTRONICALLY FILED
7/28/2017 8:30 AM
2017-CH-10345
CALENDAR: 08
PAGE 1 of 2
CIRCUIT COURT OF
COOK COUNTY, ILLINOIS
CHANCERY DIVISION
CLERK DOROTHY BROWN

# PLAINTIFFS'
# EXHIBIT E(b)



Browning BAR Longtrack

ELECTRONICALLY FILED
7/28/2017 8:30 AM
2017-CH-10345
PAGE 2 of 2

Winchester Super X Rifle

**Plaintiffs Exhibit E(b)**

ELECTRONICALLY FILED
5/28/2015 8:30 AM
2015-CH-10345
CALENDAR: 08
PAGE 1 of 3
CIRCUIT COURT OF
COOK COUNTY, ILLINOIS
CHANCERY DIVISION
CLERK DOROTHY BROWN

# PLAINTIFFS'
# EXHIBIT F

# 2 Pages



**Mini-14® Ranch Rifle**
**Centerfire Autoloading Rifle**

Features:

- Integral scope mounts and 1 inch medium height scope rings

- Patented recoil buffer system.

- Side ejection to clear a low-mounted scope.

- Chambered in the popular and proven 223 Rem. cartridge.

- Integral sling mounts.

- 5 Shot

ELECTRONICALLY FILED
7/28/2017 8:30 AM
2017-CH-10345
PAGE 2 of 3



Mini-30

**PLAINTIFFFS' EXHIBIT  F   PAGE 1 OF 2**



# Ruger Mini-14 and Mini Thirty



Sturm, Ruger & Co., Inc.

Southport, CT UCAS

.223 Remington, 7.62x39mm

**Operation:** Gas

**Safety:** Garand typ two position sliding

**Sights:** Adjustable aperture rear or folding rear, blade front

**Barrel:** 18.5" (470mm)

**Weight:** 6.75 lbs. (3.1 kg)

**Magazine Capacity** 5 rounds, detachabl box

**Modes of fire:** Safe, semi-automat

ELECTRONICALLY FILED
7/28/2017 8:30 AM
2017-CH-10345
PAGE 3 of 3

**PLAINTIFFFS' EXHIBIT F**
**PAGE 2 OF 2**

| Model | Caliber | Range | Conceal | Ammo | Mode | Damage | Weight | Avail |
|---|---|---|---|---|---|---|---|---|
| Mini-14/5 | .223 Rem | Assault Rifle | 3 | 5 clip | SA | 9M | 3.1 | 2/24 |
| Mini-14/5R | .223 Rem | Assault Rifle | 3 | 5 clip | SA | 9M | 3.1 | 2/24 |
| Mini-30/5R | 7.62x39mm | Assault Rifle | 3 | 5 clip | SA | 9M | 3.1 | 2/24 |

▣ Mini-14 includes a Garand-style rear sight, adjustable for windage and elevation. provisions for mounting a scope.

▣ Ranch Rifle (R) includes a folding adjustable rear sight. Scope mounts are machii receiver and 1" scope rings are provided.

▣ Available in stainless steel. (+50¥)

▣ Available with synthetic stock. (+50¥)

▣ 10, 20 and 30-round magazines are available for the Mini-14 and Mini-30 rifles.