## IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF ILLINOIS
## EASTERN DIVISION

| | | |
|---|---|---|
| Matthew D. Wilson and Troy Edhlund, | ) | |
| | ) | |
| Plaintiffs, | ) | |
| | ) | |
| v. | ) | |
| | ) | |
| Cook County, a public body and corporate, | ) | |
| Toni Preckwinkle, Board President, in her | ) | |
| official capacity, and its Board of | ) | Case No. 17 CV 7002 |
| Commissioners in their official capacities, | ) | |
| namely: Jerry Butler, Deborah Sims, | ) | |
| Peter N. Silvestri, John F. Daley, | ) | Prev. Case No. 17 CH 10345 |
| Larry Suffredin, Gregg Goslin, | ) | (Cook County) |
| Timothy O. Schneider, Luis Arroyo Jr., | ) | |
| Richard R. Boykin, Dennis Deer, | ) | |
| John A. Fritchey, Bridget Gainer, | ) | |
| Jesus G. Garcia, Edward M. Moody | ) | |
| Stanley Moore, Sean M. Morrison, | ) | |
| Jeffrey R. Tobolski, and Thomas Dart, | ) | |
| Sheriff of Cook County, in his official | ) | |
| capacity, | ) | |
| | ) | |
| Defendants. | ) | |

## SECOND AMENDED COMPLAINT FOR DECLARATORY AND INJUNCTIVE RELIEF

Plaintiffs, Matthew D. Wilson and Troy Edhlund, by and through LAW FIRM OF DAVID G. SIGALE, P.C., their attorney, seek a declaratory Judgment, permanent injunction, and other relief, against the County of Cook and individual Defendants, and in support of their Second Amended Complaint[1] thereof, state as follows:

---

[1] The original Complaint and First Amended Complaint were filed in the Circuit Court of Cook County prior to the Defendants' removal of this matter to this Court.

## INTRODUCTION

This is a re-filing of Case No. 07 CH 4848, previously filed and voluntarily non-suited in the Circuit Court of Cook County. The refiling was within one year of the date of the previous dismissal.

## STATEMENT OF FACTS

1. On November 14, 2006, the County Commissioners of County of Cook, a public body as defined in 5 ILCS 120/1, *et seq.*, enacted an Amendment to the Cook County Deadly Weapons Dealer Control Ordinance, generally at Cook County Code § 54-90, *et seq.* ("the Ordinance"), setting forth therein its own definitions of "Assault Weapons" (Cook County Code § 54-211) and making it a crime for any person who "shall manufacture, sell, offer or display for sale, give, lend, transfer ownership of, acquire or possess any assault weapon or large capacity magazine." (Cook County Code § 54-212.) As a penalty, the Ordinance provides that "[a]ny person found in violation of this section shall be sentenced to not more than six months imprisonment, or fined not less than $5,000.00 and not more than $10,000.00, or both." (Cook County Code § 54-214(a).) The Ordinance further requires that persons who, prior to the enactment of this Amended Ordinance, legally possessed an assault weapon or large capacity magazine prohibited by this section "shall have 60 days from the effective date of the Ordinance to do any of the following without being subject to prosecution:

> (a.) To remove the assault weapon or large capacity magazine from within the limits of the County of Cook;

        (b.) To modify the assault weapon or large capacity magazine either to render it permanently inoperative or to permanently make it a device no longer defined as an assault weapon or large capacity magazine;

        (c.) To surrender the assault weapon or large capacity magazine to the Sheriff or his designee for disposal as provided below."

(Cook County Code § 54-212(c))

The Ordinance provides further for the destruction of weapons confiscated upon direction of the Sheriff if he ascertains that said firearm is not required for evidence, thereby treating such confiscated weapons as contraband *per se*. Cook County Code § 54-213. A copy of the Ordinance Amendment is attached hereto as Plaintiffs' Exhibit A.

        2.    Troy Edhlund is a citizen/resident of Rolling Meadows, in Cook County, Illinois, and the owner of several firearms magazines, and gun parts which he legally purchased, including (a.) M1 Carbine, a semiautomatic .30 caliber rifle with a detachable magazine; (b.) M1 Garand, a semiautomatic .30 caliber rifle with a fixed magazine, (c.) French MAS 49/56 semi-automatic 7.5x54 caliber rifle with a detachable magazine, (d.) Egyptian Hakim semi-automatic .8mm. rifle with a 10 round detachable magazine, (e.) Swedish AG42B semi-automatic rifle with a 10 round detachable magazine. (f.) Romak 3 Romanian semi-automatic 8 mm. rifle, and (g.) S&W 99 in .40 caliber. See Plaintiff Edhlund's firearms types at Group Exhibit B.

        3.    Troy Edhlund is a man of ordinary intelligence, and he is unsure upon reading the aforementioned ordinance as amended, and must guess whether his

firearms are "assault weapons" within the vague language of the amended ordinance's definitions.

4.     Troy Edhlund must guess whether his firearms may be considered to be "assault weapons" by law enforcement officials under the subject amended Ordinance's vague language, and he is unsure whether his ownership of these firearms subjects him to imprisonment and fines.

5.     In addition to the firearms that Plaintiff Troy Edhlund owns, he desires to legally purchase additional firearms, parts and accessories, including some parts and accessories for the firearms he now owns, but cannot because he must guess whether they may be banned by the subject amended ordinance.

6.     Troy Edhlund is a law-abiding citizen who has never been convicted of a crime, and who possesses the said firearms for self-protection and protection of his wife and two children in their home, as part of a collection, and for target shooting and hunting. He possesses a FOID card issued by the Illinois State Police pursuant to the Illinois FOID ACT, 430 ILCS 65/1, *et seq*.

7.     Matthew D. Wilson is a citizen/resident of the Village of Brookfield, in Cook County. Illinois, and owns several firearms which he legally purchased, including a.) Walther P99 pistol in 9 mm, and b.) S&W 22A Sport [target] pistol, both with 10 round detachable magazines. *See* Plaintiff Wilson's firearms types as Group Exhibit B.

8.     Matthew D. Wilson is a man of ordinary intelligence, and he is unsure upon reading the aforementioned ordinance as amended, and must guess whether

his firearms are "assault weapons" within the vague language of the amended ordinance's definitions.

9.      Matthew D. Wilson must guess whether his firearms may be considered to be "assault weapons" by law enforcement officials under the subject amended Ordinance's vague language, and he is unsure whether the ownership of these firearms subjects him to imprisonment and fines.

10.      In addition to the firearms that Plaintiff Matthew D. Wilson owns, he desires to legally purchase additional firearms, parts and accessories, including some parts and accessories for the firearms he now owns, but cannot because he must guess whether they may be banned by the subject amended ordinance.

11.      Matthew D. Wilson is a law-abiding citizen having never been convicted of a crime, and who possesses the said firearms for self-protection and protection of himself and his wife in their home, and for target shooting. He has a FOID card issued by the Illinois State Police pursuant to the Illinois FOID Act, 430 ILCS 65/1 *et seq.*

## IRREPARABLE HARM AND INADEQUATE REMEDY AT LAW

12.      Plaintiffs will suffer irreparable harm if the Ordinance is enforced. Unless relief is granted herein, Plaintiffs will incur irreparable harm in that despite their aforesaid legal possession of firearms and magazines, and without any intent on their part to engage in any illegal activity they will be subject to arrest, prosecution and imprisonment, and be caused to expend great sums of money for their defense and face imprisonment and fine.

13.    The Plaintiffs will have no adequate remedy at law, there being no forum to recover damages, the County most likely being immune from liability for tortious conduct and resulting losses. Money damages, in an event, could never compensate the Plaintiffs for the infringement of their fundamental rights as hereinafter alleged.

14.    While care should be used in granting injunctions to avoid prospective injuries, there is no requirement that the Court must wait until the injury occurs before granting relief, and Plaintiffs have demonstrated both irreparable harm is imminent, and their remedy at law would be inadequate.

15.    Because the 60-day time limit set forth in the Ordinance has passed, within which Plaintiffs must conform to the amended ordinance's requirements to avoid being prosecuted, damages resulting from enforcement of the subject ordinance as amended are likely and not merely possible.

## COUNT I - THE ORDINANCE DEFINITION OF "ASSAULT WEAPON" IS UNCONSTITUTIONALLY VAGUE (PRESERVED FOR APPEAL).

1-15.    Plaintiffs reassert and reallege Paragraphs 1 through 15, above, as paragraphs 1 through 15 of this Count I.

16.    The Cook County Assault Weapons Ordinance, as amended and adopted on November 14, 2006, specifically the challenged sections of the Blair Holt Assault Weapons Ban (Cook County Code §§ 54-210 - 54-215), and as promulgated by the Defendant County, County Board President, and County Board members, and as enforced by the Cook County Sheriff, all in their official capacities, violates

the due process clause of the U.S. Constitution, as applied to the States by the 14th Amendment, because of vagueness in its definition language of "assault weapons."

17.     This ordinance as amended violates the "due process" clause in that it purportedly defines "assault weapons" only by an arbitrary and ill-defined subset of these weapons without providing any explanation for its selections, and the language employed to describe various features or components of firearms that make them "assault weapons" is both vague and arbitrary, to wit:

18.     Cook County Code § 54-211(1) is unconstitutionally vague and arbitrary by use of the language "A semiautomatic rifle *that has the capacity to accept* a large capacity magazine *detachable or otherwise*, and one or more of the following [listing various vague features or components of firearms]" [Underscoring added.]

19.     It has been determined by Plaintiffs' experts that any semiautomatic rifle that accepts a magazine adapted to it having a capacity often rounds will accept and employ a magazine adapted to it containing 11 or more rounds which may exist anywhere in the world.

20.     So long as a magazine exists anywhere in the world with a capacity of more than ten rounds, anyone who possesses a semiautomatic rifle with a detachable magazine (with any accessory, part or component banned by the vague language in subparagraphs A through E of Cook County Code §§ 54-211(1)), that will accept that magazine, is subject to arrest, prosecution and imprisonment as that individual then would have a firearm which "has the capacity to accept a large

7

capacity magazine." even if he does not possess a large capacity magazine, and has no intention of acquiring a large capacity magazine.

21.     A person of ordinary intelligence need not know whether the subject Ordinance bans their firearm, since the Ordinance contains no scienter requirement of an owner's knowledge as to whether a large capacity magazine, which could be accepted by his firearm, is in fact in existence.

22.     Although Plaintiff Edhlund's M1 Garand when purchased was not manufactured to accept a large capacity magazine (defined in the Ordinance as one holding in excess of ten rounds), Plaintiffs' experts have determined that there is available in the marketplace a since manufactured modified trigger guard/floor plate assembly which can be interchanged with trigger guard/floor plate assembly of the M1 Garand so as to make it capable of accepting a 20 round magazine.

23.     Most of Plaintiff Edhlund's semiautomatic rifles, including the French MAS 49/56 semi-automatic rifle, Egyptian Hakim 8 mm. semiautomatic and Romak 3 Romanian semiautomatic were manufactured to accept 10 round detachable magazines.

24.     Plaintiff Edhlund does not possess, and do not know of any other magazines which would fit his respective rifles, but would, nevertheless, face arrest and prosecution because said rifles would accept a detachable magazine adapted to them with a capacity of 11 rounds or more, if one has ever been manufactured anywhere, or will be in the future.

25.    Cook County Code § 54-211(1)(B) is unconstitutionally vague and arbitrary as it makes illegal anyone's possession of a semi-automatic rifle [as described in (1)] *that has "[any feature capable of functioning as a protruding grip that can be held by the non-trigger hand.*" [Italics added.]

26.    This language, as aforesaid, would encompass a sling attachment usually found attached to the bottom or side of the forend on countless, ordinary sporting rifles, including former military-style rifles, used in competition matches sponsored by the Civilian Marksmanship Program and/or for hunting. These would include the M1 Carbine and M1 Garand, commonly used both in competition shooting and hunting.

27.    Such sporting rifles would in no way be considered "assault weapons" by persons of ordinary intelligence, but under the ordinance as amended anyone possessing such semi-automatic sporting rifles will be subject to prosecution and imprisonment.

28.    Plaintiff Troy Edhlund's M-1 Garand, MAS 49/56, MiCarbine, and his Egyptian Hakim rifle all have this feature, and thus Edhlund cannot determine with certainty, and must guess, if that feature is a "protruding grip" within the amended Ordinance definition, and if law enforcement officials would consider that feature to be a "protruding grip" within said definition

29.    Cook County Code § 54-211(1)(D) is unconstitutionally vague and arbitrary in that it makes it illegal to possess a semi-automatic rifle [as described in (1)] with "[a] shroud attached to the barrel, or that partially or completely encircles

9

the barrel, allowing the bearer to hold the firearm with the non-trigger hand without being burned, but excluding a slide that encircles the barrel..."

30.     Almost any long-arm rifle has a forend component that at least partially encircles the barrel, and this feature is found on virtually hundreds of sporting semiautomatic rifles used for hunting or target competition shooting, and include those dating as far back as the 1900's, such as the Winchester 1905, 1907 and 1910 models. See Plaintiffs' Group Exhibit B-(a).

31.     Firearms owned by plaintiff Troy Edhlund, specifically his M1 Garand, M1 Carbine, French MAS 49/56 and his Egyptian Hakim have this feature, and he must guess at whether those firearms have "shrouds" within the amended Ordinance's definition thereof, and if law enforcement officials would consider this feature a "shroud."

32.     Cook County Code § 54-211(3) by use of the language "[a] semiautomatic pistol *that has the capacity to accept* a detachable magazine and has one or more of the following. . ." [Italics added] and thereafter listing subparagraphs "A, B, C, D and E" sets forth almost identical features as those stated in Section 6-1(a)(1), and as herein noted are unconstitutionally vague features.

33.     Cook County Code § 54-211(3)(D) is unconstitutionally vague and arbitrary in that it makes it illegal to possess a semi-automatic pistol that has the capacity to accept a detachable magazine and has "[a] muzzle brake or muzzle compensator,…"

34.     Cook County Code § 54-211(1)(E) makes it illegal to possess a s semiautomatic rifle that has the capacity to accept a large capacity magazine detachable or otherwise and has "[a] muzzle brake or muzzle compensator." Unlike federal law which banned "flash suppressors," the "muzzle brake" and "muzzle compensator" are not used to prevent one from determining where a shot is coming from (as it may concern law enforcement officials) but, instead (by the very definitions stated in the amended ordinance at Cook County Code § 211) to "reduce recoil" (muzzle brake) or to "control muzzle movement" (muzzle compensator), both features commonly employed in target competition matches including Olympic target shooting events, the latter purportedly exempt under Cook County Code § 54-211 as amended.

35.     Cook County Code § 54-211(3)(A), in conjunction with Cook County Code § 54-212, is unconstitutionally vague and arbitrary in that it makes it illegal to possess a semiautomatic pistol that has the capacity to accept a detachable magazine and "[a]ny feature capable of functioning as a protruding grip that can be held by the non-trigger hand."

36.     Many manufacturers have made pistols that can accept accessories such as flashlights and lasers attached to a forward rail or grooves below the barrel and in front of the trigger guard, and that feature may be considered by law enforcement officials to be a "protruding grip."

37.     Plaintiff Wilson has a Walther P99 pistol in 9mm with rails for mounting special accessories under the barrel in front of the trigger guard, and he

desires to place a laser or a flashlight onto the forward rail of his handgun, both for accuracy in target shooting and for the purpose of assuring his aim at an intruder in his home, but he cannot determine with certainty, and must guess, if either of these accessories placed onto the forward rail is a "pistol grip" within the meaning of the amended ordinance definition thereof, and if law enforcement officials would consider same a "pistol grip" within said definition.

38.     Plaintiff Edhlund owns a S & W P99 with rails for mounting special accessories under the barrel in front of the trigger guard, and he desires to place a laser or a flashlight onto the forward rail of his handgun for the purpose of assuring his aim at an intruder in his home, but he cannot determine with certainty, and must guess, if either of said accessories placed onto the forward rail is a "protruding grip" within the meaning of the definition thereof in the amended ordinance, and if law enforcement officials would consider this a "protruding grip" within said definition.

39.     Cook County Code § 54-211(4)(B) is unconstitutionally vague and arbitrary in that it makes it illegal to possess a semi-automatic shotgun with "[a]ny feature functioning as a protruding grip that can be held by the non-trigger hand." Almost all semi-automatic shotguns have a forend that at least partially encircles the barrel, and is found on virtually hundreds of sporting shotguns used for hunting or trap and skeet shooting, including competitive matches. See various semi-automatic shotguns with typical forends at Plaintiffs' Group Exhibit C.

40.     The forend component of a shotgun, that is held by the non-trigger hand, may be considered by law enforcement officials as a "feature functioning as a protruding grip."

41.     Cook County Code § 54-211(4)(D) is unconstitutionally vague and arbitrary in that it makes it illegal to possess a shotgun with "[a] fixed magazine capacity in excess of 5 rounds." Since most shotgun rounds are available in different lengths, a shotgun's magazine capacity may increase to more than five rounds, and this language would impose criminal liability regardless of whether the owner knows of the existence of shorter length rounds that would fit in his or her semi-automatic shotgun.

42.     Cook County Code § 54-211(6) is unconstitutionally vague and arbitrary in that it makes it illegal to possess a "Conversion kit, part or combination of parts, from which an assault weapon can be assembled, if those parts are in the possession or under the control of the same person."

43.     The amendment at this Section conflicts with federal law regarding a so-called "conversion kit" that requires a "*mens rea*" element to constitute a violation.

44.     Plaintiffs' experts have determined that there exists in the firearm market "parts kits" that can be purchased by Plaintiffs, without any knowledge that they can assemble an "assault weapon" from said part or parts within the vague meaning thereof in the amended ordinance, so that they, and others similarly situated, upon purchase of these "kits, or parts" would be subjected to arrest and

13

criminal prosecution because the amendment language defining "assault weapons" fails to provide sufficient information to enable a person of average intelligence to determine whether a particular combination of parts is within the ordinance amendment's coverage.

45.     Cook County Code § 54-211(7) of the amended Ordinance is unconstitutionally vague and arbitrary by use of the language: "Shall include but not be limited to, the assault weapons models identified as follows: (A) The following rifles *or copies or duplicates* thereof." [Underscoring added.]

46.     Plaintiffs, persons of normal intelligence, must guess at the meanings of "copies" or "duplicates" as applied to firearms, as

> (i) the standard Webster unabridged dictionary definition of "copy" and of "duplicate," while showing some similarity in the words as verbs, adjectives or nouns, defines "copy" as "to make something so that it resembles an existing thing, whereas "duplicate" is defined as "either of two things exactly alike and usually produced at the same time or by the same process."

> (ii) Black's Law Dictionary treats both words in the context of writings or documents, in its principal definition of the words used as nouns, and when "duplicate" is used as a verb it means: "To double, repeat, make or add a thing exactly like a preceding one; reproduce exactly [Underscoring added.]

14

(iii) These terms can be extremely difficult to apply to firearms that may have similarity in function, but can be totally different in outward features, and inside components.

47. Plaintiff, Edhlund, has a Romak 3, a Romanian rifle in 7.62x54 caliber which has features similar to several of the firearms listed at Sec. 6-1(a)(7)(A)(i), and while it should not be a copy or duplicate of the firearms listed at sub-paragraph (i), because of the vague language in the amended ordinance language defining "assault weapons" he must "guess" whether this rifle would be considered a copy or duplicate by law enforcement officials, thereby subjecting him to arrest and prosecution.

48. Cook County Code § 54-211(7)(A)(xi) is unconstitutionally vague and arbitrary in that it contains only the term "saiga." The "Saiga" can be a rifle or a shotgun, and without specifying either, Plaintiffs must guess the vague meaning of this term.

49. Cook County Code § 54-211(7)(A)(xiv) is unconstitutionally vague and arbitrary in that it contains only the term "SLG 95." Failure to name the manufacturer or the caliber of the firearm make it impossible to know what is proscribed, and Plaintiffs must guess at the vague meaning of this term.

50. Cook County Code § 54-211(7)(A)(xv) is unconstitutionally vague and arbitrary in that it contains only the term "SLR 95 or 96." The failure to name manufacturers, model or caliber makes it impossible to know what is proscribed, and Plaintiffs must guess at the vague meaning of this term.

51.     The amended ordinance provides for three (3) methods of complying with its provisions—provided they are effectuated within sixty (60) days from the effective date of the ordinance as amended, which has long passed. Cook County Code § 54-212(c).

52.     Because there is no stated effective date of the ordinance as amended, as a matter of law, the effective date is that date the law was passed—that is, November 14, 2007.

53.     The amount of time given within which a "modification" can be effectuated is insufficient, and plaintiffs did not learn of the passage of the amendments until after ninety (90) days had passed.

54.     The amended ordinance sub-section (c)(2) at Cook County Code §§ 54-212(c)(2) is unconstitutionally vague and underinclusive in that it states one of the acts a citizen must perform to avoid arrest and prosecution for possession of an "assault weapon," or "large capacity magazine" (as purportedly defined in the amended language), to wit:

> To *modify* the assault weapon or large capacity magazine either to render it permanently inoperable or to permanently make it a device no longer defined as an assault weapon or large capacity magazine . . . [Underscoring added.]

55.     "To modify" is underinclusive and vague in that "modification" of a firearm can involve a myriad of components, and skill not possessed by persons of ordinary intelligence, such as Plaintiffs, and the amended ordinance fails to state whether the "modification" may be effectuated by a gunsmith, whereby, in many

cases the owner would have to wait weeks to months before retrieving a "modified" firearm.

56.     Because plaintiffs are unable to determine with exactness, and must "guess" at the meaning of the amended ordinance definitions as they may apply to the various firearms they own, including some of those previously stated: (i) M-1 Carbine, (ii) M-1 Garand (iii) MAS 49/56 rifle, (iv) Romak 3 rifle, (v) Walther P99 pistol, (vi) Smith & Wesson 99 pistol, (vii) Egyptian Hakim rifle, and (viii) Swedish AG42B rifle, each of them has to "guess" whether or not his firearms require "modification," and what "modification" would satisfy the ordinance language to "make it a device no longer defined as an assault weapon or large capacity magazine." [Emphasis added.]

## COUNT II - THE ORDINANCE AS AMENDED VIOLATES DUE PROCESS IN THAT IT FAILS TO PROVIDE A SCIENTER REQUIREMENT, THEREBY IMPOSING STRICT LIABILITY TO ITS VAGUE "ASSAULT WEAPON" DEFINITION (PRESERVED FOR APPEAL).

1-15.   Plaintiffs reassert and reallege Paragraphs 1 through 15, above, as Plaintiffs' paragraphs 1 through 15 of this Count II.

16.     The Cook County Assault Weapons Ordinance, as amended and adopted on November 14, 2006, specifically the challenged sections of the Blair Holt Assault Weapons Ban (Cook County Code §§ 54-210 - 54-215), and as promulgated by the Defendant County, County Board President, and County Board members, and as enforced by the Cook County Sheriff, all in their official capacities, violates the due process clause of the U.S. Constitution, as applied to the States by the 14th Amendment, by (i) failing to provide a scienter requirement, thereby imposing

17

"strict liability" for possession of firearms included under its vague definition of "assault weapon." (ii) Said ordinance further violates the constitutional requirement that a law give fair warning of that which it prohibits.

17.     The subject Ordinance as amended at § 54-211(6) conflicts with federal law regarding a "conversion kit" that require a "*mens rea*" element to constitute a violation.

18.     There exists in the firearm market various firearm parts that are called "parts kits" that can be purchased by Plaintiffs, without any knowledge that they can assemble an "assault weapon" from said part or parts within the vague meaning thereof in the amended ordinance, so that they, and others similarly situated, upon purchase of these so-called "conversion kit, part, or parts" would be subjected to arrest and criminal prosecution because the amendment language defining "assault weapons" fails to provide sufficient information to enable a person of average intelligence to determine whether a particular combination of parts is within the ordinance coverage.

19.     Because of its criminal proscriptions, without a scienter requirement, relatively stringent review of the County's assault weapon ban is necessary.

20.     Because the amended ordinance imposes strict liability, and its definitions of "assault weapon" are vague, as hereinabove noted, it violates the constitutional requirement that a law give fair warning of that which it prohibits.

## COUNT III - THE ORDINANCE IS OVERBROAD IN ITS APPLICATIONS AND THEREBY VIOLATES DUE PROCESS (PRESERVED FOR APPEAL).

1-15.   Plaintiffs reassert and reallege paragraphs 1 through 15, above, as

paragraphs 1 through 15 of this Count III.

16. Cook County Assault Weapons Ordinance, as amended and adopted on November 14, 2006, specifically the challenged sections of the Blair Holt Assault Weapons Ban (Cook County Code §§ 54-210 - 54-215), and as promulgated by the Defendant County, County Board President, and County Board members, and as enforced by the Cook County Sheriff, all in their official capacities, violates the due process clause of the U.S. Constitution, as applied to the States by the 14th Amendment, because it is overbroad so as to render it arbitrary, capricious and unreasonable in its application, to wit:

17. The amended ordinance reaches far beyond the evil which it purportedly addresses—that is, the use of certain firearms by criminals who constitute a narrow class of such users, as compared to the multitude of users, such as the Plaintiffs, who legally possess these type of firearms for lawful purposes of self-defense in their homes, and for hunting and shooting competition.

18. The ordinance as amended is so overbroad that it will by virtue of the vague definitions contained therein, prohibit the possession of various firearms that could not rationally be considered to be "assault weapons" and that would presumably fall outside the scope of the Ordinance's intended purpose. For instance, the M1 Carbine possessed by Plaintiff Edhlund is a semi-automatic rifle with a detachable magazine, and due to the vague definitions in the ordinance, it could be considered to have both a pistol grip and a shroud over the barrel, potentially resulting in the M1 Carbine being a prohibited firearm. *See* Plaintiffs Exhibit E(a).

19. The Winchester Super X rifle and the Browning BAR rifle are semi-automatic rifles with detachable magazines, and because of the vague definitions in the ordinance as amended, they could be considered "assault weapons" since they arguably have both a protruding grip and a shroud that partially encircles the barrel. A citizen possessing either of these rifles would not likely believe he or she owned as "assault rifle" subjecting one to prosecution under the amended ordinance. *See* Plaintiffs Exhibit E(b).

## COUNT IV - THE ORDINANCE IN ITS APPLICATION VIOLATES PLAINTIFFS' INDIVIDUAL SECOND AMENDMENT RIGHT TO KEEP AND BEAR ARMS. (42 U.S.C § 1983; U.S. CONST. AMEND. II, XIV)

1-15. Plaintiffs reassert and reallege paragraphs 1 through 15, above, as paragraphs 1 through 15 of this Count IV.

16. Prior to the enactment of the subject Ordinance as amended, and currently, the Plaintiff gun owners, within Cook County's jurisdiction, have abided by the existing gun laws within their respective municipalities, the County and the State of Illinois, and all have been law-abiding gun owners exercising their fundamental right to keep and bear arms, and to protect their person and that of their respective family members, within the confines of their homes by retaining in their respective possession and control various firearms legally acquired in compliance with the Illinois' FOID Act (430 ILCS 65/1 *et seq.*), and as guaranteed under state and federal law. See 720 ILCS 5/7-1 (Use of force in defense of person); 720 ILCS 5/7-2 (Use of force in defense of dwelling); 720 ILCS 517-3 (Use of force in defense of other property); 720 ILCS 517-6 (Private person's use of force in making

20

arrest); 720 ILCS 5/7-8 (Force likely to cause death or great bodily harm); 720 ILCS

5/7-14 (Affirmative defense); Article 1, Section 22, Illinois Constitution; U.S Const.

Amend II, XIV.

17.     The challenged Ordinances, specifically the challenged sections of the

Blair Holt Assault Weapons Ban (Cook County Code §§ 54-210 - 54-215), and as

promulgated by the Defendant County, County Board President, and County Board

members, and as enforced by the Cook County Sheriff, all in their official capacities,

violate the Plaintiffs' fundamental right to self-defense and defense of family with

arms that are "in common use," and are "typically possessed by law-abiding persons

for lawful purposes," which is a right guaranteed by the Second and Fourteenth

Amendments to the United States Constitution, and must therefore be

preliminarily and permanently enjoined.

## COUNT V - THE COUNTY'S UNCONSTITUTIONAL EXERCISE OF ITS POLICE POWERS VIOLATES DUE PROCESS (PRESERVED FOR APPEAL).

1-15.   Plaintiffs reassert and reallege paragraphs 1 through 15, above, as

paragraphs 1 through 15 of this Count V.

16.     The Due Process rights of Plaintiffs have been violated in that the

subject Ordinance as amended, specifically the challenged sections of the Blair Holt

Assault Weapons Ban (Cook County Code §§ 54-210 - 54-215), and as promulgated

by the Defendant County, County Board President, and County Board members,

and as enforced by the Cook County Sheriff, all in their official capacities, pursuant

to the County's unconstitutional exercise of its police powers, mandates Plaintiffs

removing, modifying, rendering permanently inoperable, or otherwise forfeiting

conventional semi-automatic firearms to satisfy the capricious and arbitrary provisions of said amended ordinance, absent any reasonable guidance for enforcement by law enforcement personnel.

17.    The Plaintiffs are denied due process in that the provisions of the Ordinance relating to definitions of "Assault Weapons" and their varied components, including definitions herein above enumerated, are so vague that the Ordinance arbitrarily and capriciously bans ordinary rifles and shotguns that are types of firearms that have been in use for almost 150 years, and the Plaintiffs as owners of those types of firearms must guess at the meaning of the Ordinance amendments.

18.    The challenged Ordinances are unconstitutionally vague in that (i) they fail to give notice to persons of ordinary intelligence, Plaintiffs, and others similarly situated, that certain conduct is prohibited under its provisions, and (ii) they fail to give any guidance to the interpretation of the various "assault weapon" components, and in that regard they fail to provide sufficiently definite standards for law enforcement officer fact finders that its application does not depend merely on their private conceptions.

19.    Because of the complexities involved in gunsmithing, even those firearms that may have been modified by a Plaintiff, or others similarly situated, in an attempt to satisfy the Ordinance provisions, are likely to be deemed illegal by law enforcement personnel.

20.     The average law enforcement officers—absent any guidance in the text of the amended ordinance-- viewing such "modified" firearms, without special knowledge, may focus their attention, and thereby their perception, on outward appearances, and either have to confiscate the firearm for further scrutiny, or otherwise guess at whether its modification satisfies or does not satisfy the Ordinance's definition of an "assault weapon."

21.     The problems law enforcement officers will encounter when viewing a firearm that has not been modified by a Plaintiff, or other similarly-situated citizen, because of the vagueness in the statute, will likely lead him or her to mistakenly believe the subject firearm is an "assault weapon."

22.     Without any standards, or guidance in the text of the amended ordinance, for law enforcement officers to support their private conceptions, they are left with just that—private conceptions, and nothing more, leaving the gun owner to the mercy of the law enforcement officers' "perceived" finding as to whether or not the long rifle, shotgun or other firearm is in fact an "assault weapon."

23.     The challenged Ordinances, in failing to provide a reasonable method of achieving their stated objectives, are not a legitimate exercise of the police power under the Illinois Constitution.

## COUNT VI - EQUAL PROTECTION (PRESERVED FOR APPEAL)

1-15.   Plaintiffs reassert and reallege paragraphs 1 through 15, above, as paragraphs 1 through 15 of this Count VI.

16.     Cook County Code § 54-211(7) of the amended Ordinance, and as promulgated by the Defendant County, County Board President, and County Board members, and as enforced by the Cook County Sheriff, all in their official capacities, contains the language "Shall include but not be limited to, the assault weapons models identified as follows: (A) The following rifles or copies or duplicates thereof."

17.     This section prohibits certain firearms based not on any particular characteristics, but by name. Certain named firearms are banned along with any firearms that may be determined to be "copies or duplicates" of the named firearms.

18.     This Section violates the equal protection clause of the U.S. Constitution, as applied by the States by the 14th Amendment, by arbitrarily differentiating between identically-situated persons by banning specifically listed "assault weapons" but not banning ownership of other identical firearms, to wit:

(a.) AR-15, Bushmaster XM-15, Armalite M15, or Olympic Arms PCR: there are a number of firearms which are not "copies or duplicates" of these banned firearms, yet identical in function. The Stag Arms Company makes a line of rifles which appear to be identical to an AR-15, but feature modifications which make them easier for left-handed shooters to use. *See* Plaintiffs' Exhibit D. These include a modification that ejects spent casings to the left, as opposed to the right.

(b.) Functionally, the Stag Arms rifle is identical to a standard AR-15, yet the Stag Arms rifle could not be considered a "copy or duplicate" of a standard

AR-15, thus, a person who owns a Stag Arms rifle is treated differently under this section than a person who owns a functionally identical Bushmaster.

(c.) Various manufacturers are making rifles that are visually and functionally identical to banned AR-15s, yet use different caliber ammunition. Since such a rifle could not be considered a "copy or duplicate," the owner thereof would not run afoul of this section, while the owner of a visually and functionally identical AR-15 would face criminal prosecution.

(d.)    Some manufacturers, such as the Land Warfare Resources Corporation, are producing rifles that are visually identical to a standard AR-15, and use the same caliber ammunition, yet employ a different internal mechanism (a "gas piston") that allows the rifle to fire semi-automatically (*See* Plaintiffs' Exhibit E). Due to the different operating mechanism, these rifles could not be considered copies or duplicates, and would not be prohibited by this section despite having the same appearance, firing the same ammunition, and using the same magazines as the prohibited firearms.

(e.) Sturm, Ruger Mini-14: while the Mini-14 is banned by name, the Ruger Mini-30 is not. The Mini-30 is visually identical to, and mechanically very similar to, the Mini-14, yet employs different caliber ammunition, and thus, it could not be considered a "copy or duplicate." An owner of a Mini-14 would face prosecution under this section, yet the owner of a Mini-30 would not. *See* Plaintiffs' Exhibit F.

19.     Owners of specifically enumerated firearms will suffer the indignities of prosecution and confiscation of firearms owned or possessed in compliance with the State of Illinois FOID Act, (430 ILCS 65/1, *et seq.*), because of the arbitrary classification of their firearms under this Section that is not rationally related to any legitimate government purpose.

20.     Unlike those statutes and/or Ordinances that may classify or otherwise draw a distinction between violent felony offenders and non-violent offenders that have been held non-offensive of the doctrine of equal protection under the laws, Cook County Code § 54-211(7) arbitrarily creates two classes of gun owners; those who own firearms that are specifically named as prohibited, and those who own firearms that are functionally identical yet not specifically named. Gun owners whose firearms are named will be forced to give up their previously legally-possessed firearms or face criminal sanctions, while the owners of firearms that are not named will not run afoul of this section.

WHEREFORE: Plaintiffs pray that it would serve the public interest best if this Honorable Court would issue a permanent injunction, without bond required of the Plaintiffs, inasmuch as the Ordinance as it stands is an unconstitutional exercise of Cook County's Home Rule police powers, depriving the Plaintiffs and countless law-abiding citizens of their Constitutional rights, and:

1.     Enter its Order declaring the challenged Ordinances unconstitutional and unenforceable;

2. Issue its Order permanently, enjoining the County of Cook from enforcing the challenged Ordinances;

3. Award Plaintiffs attorneys' fees and costs pursuant to 42 U.S.C. § 1988 due to Defendant's violations of Plaintiffs' rights under U.S. Const. Amend. II and XIV, and 42 U.S.C. § 1983, and

4. Enter its Order granting such other and further relief as this court deems necessary and appropriate.

Date: November 28, 2017     /s/ David G. Sigale
               One of the Attorneys for Plaintiffs

David G. Sigale (Atty. ID# 6238103)
LAW FIRM OF DAVID G. SIGALE, P.C.
799 Roosevelt Road, Suite 207
Glen Ellyn, IL 60137
630.452.4547
dsigale@sigalelaw.com

Gregory A. Bedell
Knabe, Kroning & Bedell
20 South Clark Street, Suite 2301
Chicago, IL 60603
(312) 977-9119
gbedell@kkbchicago.com

Josh Glazov (Atty. ID# 6258029)
The Glazov Law Firm LLC
106 West Calendar Court, Suite 125
LaGrange, IL 60525
(312) 730-5541
jglazov@glazovlaw.com

Edward J. Murphy (Atty. ID# 3126287)
Lipe Lyons Murphy Nahrstadt & Pontikis Ltd.
230 West Monroe Street, Suite 2260
Chicago, IL 60606
(312) 448-6234
ejm@lipelyons.com