UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

MATTHEW D. WILSON and TROY
EDHLUND,

    Plaintiffs,

    v.

COOK COUNTY, et al.,

    Defendants.

No. 17 CV 7002

Judge Manish S. Shah

## MEMORANDUM OPINION AND ORDER

Cook County and the city of Highland Park, Illinois, each enacted legislation effectively banning assault weapons within their borders. The court of appeals upheld Highland Park's law against a facial challenge under the Second Amendment. *Friedman v. City of Highland Park, Ill.*, 784 F.3d 406 (7th Cir. 2015), *cert. denied* 136 S.Ct. 447 (2015). Plaintiffs Matthew D. Wilson and Troy Edhlund challenge the county's ordinance and argue that it infringes on their Second Amendment rights. But there is no meaningful difference between the county's ordinance and Highland Park's, and no reason to develop a factual record when the court of appeals has held that a local government's categorical regulation of assault weapons falls outside the scope of the Second Amendment's individual right to keep and bear arms. Defendants' motion to dismiss is granted.[1]

---

[1] A complaint must contain factual allegations that plausibly suggest a right to relief. *Ashcroft v. Iqbal*, 556 U.S. 662, 677–78 (2009). The court must accept all factual allegations as true and draw all reasonable inferences in the plaintiff's favor, but the court need not accept legal conclusions or conclusory allegations. *Id.* at 678–79.

The county ordinance, an amendment to the Cook County Deadly Weapons Dealer Control Ordinance, defines "Assault Weapons," and makes it a crime for any person to "manufacture, sell, offer or display for sale, give, lend, transfer ownership of, acquire or possess any assault weapon or large capacity magazine." [17] ¶ 1 (quoting Cook County Code §§ 54-211, 54-212).[2] As penalties, the ordinance includes a monetary fine or a term of imprisonment; it requires people who possess such prohibited weapons to either remove the weapon from county limits, modify it to render it permanently inoperative or beyond-the-scope of the ordinance, or surrender it; and the ordinance provides that the Sheriff may destroy such a weapon if one is confiscated. *Id.* Plaintiffs live in Cook County and they possess and want to acquire weapons that they believe this ordinance prohibits. *Id.* ¶¶ 2–11. They say that the ordinance violates their fundamental right to self-defense and defense of family with firearms that are commonly used by law-abiding persons for lawful purposes. *Id.* at 21, ¶ 17.

Count IV of the amended complaint—a facial challenge to the amended ordinance under the Second and Fourteenth Amendments—is the only claim before this court. The complaint states that Counts I, II, III, and V are alleged solely for purposes of an appeal. *See* [17]. Plaintiffs first filed this action against defendants in state court and litigated their due process and equal protection claims through a final judgment that was affirmed by the Illinois Supreme Court. *Wilson v. Cty. of*

---

[2] Bracketed numbers refer to entries on the district court docket. Page numbers are taken from the CM/ECF header at the top of filings. The facts are taken from the operative complaint, [17].

*Cook*, 2012 IL 112026 (2012) (remanding Second Amendment claim, but affirming dismissal of due process and equal protection claims). Once back in the trial court, plaintiffs voluntarily non-suited the case in the Circuit Court of Cook County, and then refiled it. [17] at 2. Defendants do not dispute that plaintiffs timely refiled this action. They do, however, dispute that plaintiffs have preserved an appeal on Counts I, II, III, and V. The Illinois Supreme Court affirmed the dismissal of those counts in the earlier phase of the litigation, so defendants believe that plaintiffs can only appeal those claims to the United States Supreme Court. [18] at 12 n.6 (citing 28 U.S.C. § 1257(a)). Whether or not plaintiffs have preserved a challenge to the dismissals of Counts I, II, III, and V, plaintiffs agree that those counts have been dismissed and they do not ask this court to adjudicate them. The same parties litigated those claims to conclusion on the merits and they are dismissed with prejudice.

The ordinance plaintiffs challenge here is materially identical to the ordinance at issue in *Friedman*. As such, defendants contend that plaintiffs cannot prevail on their facial challenge to the ordinance. *See Ezell v. City of Chi.*, 651 F.3d 684, 698 (7th Cir. 2011) ("a law is not facially unconstitutional unless it 'is unconstitutional in all of its applications.'") (citations omitted). Plaintiffs do not dispute that the Highland Park ordinance is virtually the same as the county's ordinance or that *Friedman* is controlling authority on this court. Instead, plaintiffs

3

argue that the court in *Friedman*, having the benefit of a fully-developed record,[3] reached a fact-specific holding that is distinguishable here.

The Second Amendment does not guarantee a private right to possess a type of weapon (such as a machine gun or a sawed-off shotgun) that the government would not expect citizens to bring with them when called to serve in the militia. *Friedman*, 784 F.3d at 408 (citing *District of Columbia v. Heller*, 554 U.S. 570, 624–25 (2008); *United States v. Miller*, 307 U.S. 174 (1939)). And because, as *Heller* and *Miller* acknowledged, the types of weapons individuals have at home for militia use might change over time, it would be circular to consider how common a weapon is at the time of a lawsuit in deciding the constitutionality of a ban on that weapon. *Id.* at 409 ("A law's existence can't be the source of its own constitutional validity."). Instead, the relevant questions are: (1) whether a regulation bans weapons that were common at the time of ratification or if it bans weapons that have "some reasonable relationship to the preservation or efficiency of a well regulated militia," and (2) whether law-abiding citizens maintain adequate means of self-defense. *Id.* at 410 (quoting *Heller*, 554 U.S. at 622–25).

Applying that framework to Highland Park's ordinance, the court of appeals noted that the features prohibited by the law were not common in 1791, but that the

---

[3] Plaintiffs note that the out-of-circuit cases defendants rely on were not decided on the pleadings. [23] at 12 (citing *Heller v. District of Columbia*, 670 F.3d 1244 (D.C. Cir. 2011); *N.Y. State Rifle & Pistol Ass'n v. Cuomo*, 804 F.3d 242 (2d Cir. 2015); *Peruta v. Cty. of San Diego*, 824 F.3d 919 (9th Cir. 2016); and *Kolbe v. Hogan*, 849 F.3d 114 (4th Cir. 2017)). In 2012, before *Friedman*, the Illinois Supreme Court held that it could not decide on the pleadings whether assault weapons, as defined in the ordinance, categorically fell outside the scope of the rights protected by the Second Amendment. *Wilson*, 2012 IL 112026 at ¶ 46 (2012).

ordinance prohibited some weapons that are commonly used for military functions and that might affect the preservation or effectiveness of the militia. *Id.* But because states are in charge of militias, the court reasoned that they should be allowed to decide when civilians can possess such military-grade weapons.[4] *Id.* (citing *Heller*, 554 U.S. 570; *Miller*, 307 U.S. 174). The court also decided that Highland Park's ordinance left adequate means for self-defense because, as in *Heller*, the residents would still have access to most long guns, pistols, and revolvers. *Id.* at 411. Nothing about that analysis was specific to Highland Park.

The court cited some general studies—(1) data establishes that laws similar to Highland Park's reduce the share of gun crimes involving assault weapons; and (2) some evidence links the availability of assault weapons to gun-related homicides. *Id.* at 411–12. Based on that information (as opposed to facts from the record concerning Highland Park, specifically), the court observed that although the ban would not eliminate gun violence in Highland Park, which was already rare, it might reduce the overall dangerousness of the crime that does occur.[5] *Id.* At the very least, the court estimated that the ban would increase the community's

---

[4] That traditional power likely extends to local governments, too. *Friedman*, 784 F.3d at 410–11 (citing 430 ILCS 65/13.1(c)).

[5] Though plaintiffs describe Highland Park as "a tranquil town in Lake County," [23] at 10, with 29,000 residents, and they contrast it with Cook County, which has over five million residents, the town's tranquility was not decisive to the court. *See Friedman*, 784 F.3d at 411. Other than its observation that shootings were rare in Highland Park, the court did not focus on facts unique to Highland Park. Similarly, the assertions Highland Park included in its summary judgment briefs about the town's well-staffed police department and infrequent crime (in reference to the assertion that Highland Park residents do not need "[o]verwhelming firepower" for self-defense) did not appear in the court's opinion. *See* Brief for Defendants at 4, 11, *Friedman v. City of Highland Park*, 68 F.Supp.3d 895 (N.D. Ill. 2014) (No. 13-cv-9073).

5

perception about their safety, which would be "a substantial benefit." *Id.* The court gave no indication that this conclusion was limited to Highland Park. Similar estimates or hypotheses about crime levels and the public perception of safety could be made about Cook County, and in any event, the justifications for Highland Park's law were not part of the court's decision that assault weapons are not the kinds of arms the Second Amendment protects.

Plaintiffs insist that the ordinance strikes at the core of the Second Amendment right to bear arms and that it cannot survive constitutional scrutiny under *Ezell*'s framework. This is incorrect. *Ezell* instructs courts to address a threshold question, asking whether the regulated activity falls within the scope of the Second Amendment. 651 F.3d at 701. If the regulated activity is outside the reach of the Second Amendment, the law survives the constitutional challenge. *Id.* at 702–03; *Ezell v. City of Chicago*, 846 F.3d 888, 892 (7th Cir. 2017). In *Friedman*, the Seventh Circuit rejected the argument that the Second Amendment conferred a right to own assault weapons. As a result, this court cannot now conclude that the county's ordinance—a ban on assault weapons—regulates activity within the scope of the Second Amendment. The *Ezell* analysis, therefore, ends at the threshold question, and the conclusion remains the same: the Cook County ordinance is constitutional. The court need not consider plaintiffs' arguments about the appropriate level of scrutiny to apply or about the need for discovery to discern (and assess) defendants' justifications for the ban.

That the courts in *Friedman* and similar cases (*New York State Rifle & Pistol Association*, *Peruta*, and *Kolbe*) allowed the parties to exchange discovery before terminating those cases is not a basis for denying the motion to dismiss. Under *Friedman*, plaintiffs cannot challenge the ordinance under the Second Amendment. The motion to dismiss is granted.

Ordinarily, leave to amend the complaint should be freely given. *See Runnion ex rel. Runnion v. Girl Scouts of Greater Chi. & Nw. Ind.*, 786 F.3d 510, 518 (7th Cir. 2015) (there is a presumption in favor of giving plaintiffs at least one opportunity to amend the complaint). Here, however, *Friedman* forecloses a facial challenge to this ordinance under the Second Amendment, and it would be futile to give plaintiffs leave to amend the complaint. The dismissal is with prejudice. Enter judgment and terminate civil case.

ENTER:

_____
Manish S. Shah
United States District Judge

Date: August 3, 2018